IMPERIAL TEXTILE CO. OF NEW YORK, INC., Plaintiff,

v.

AMETEX FABRICS INC., Defendant.

No. 87 Civ. 8478 (RO).

United States District Court, S.D. New York.

Dec. 16, 1987.

---

Helfat & Helfat, New York City, for plaintiff; Bernard A. Helfat, of counsel.

Amster, Rothstein & Ebenstein, New York City, for defendant; Daniel S. Ebenstein, of counsel.

## OPINION AND ORDER

OWEN, District Judge:

■ Plaintiff Imperial Textile Company of New York, Inc., a converter of textiles, seeks a preliminary injunction against Ametex Fabrics Inc., another textile converter, based on Ametex's alleged infringement of Imperial's copyrighted fabric design. Plaintiff holds a copyright registration for its design which was filed prior to the commencement of this suit and is accordingly the holder of a valid copyright in the design at issue.[1]

Plaintiff's design, of which defendant was aware, is called "Athena" and has been on the market since 1984. It consists of large-petaled flowers and stems on a solid colored background printed on cotton fabric. Defendant's design, called "February" and first made in 1987, is printed on similar fabric and contains large-petaled flowers and stems on a solid colored background; it is cheaper per yard. Both fabrics are currently on the market, and both plaintiff and defendant produce their respective designs in various colors. The plaintiff's most successful color combination is essentially pink, mauve and gray petals on a charcoal background, and defendant's *first* rendering of *its* design was pink, mauve and gray petals on a charcoal background. Defendant's other color combinations came later.

■ At the hearing before me, defendant presented all of its witnesses who appear to have been involved in the "independent creation" of its initial pink-charcoal version discussed above. While I accept defendant's contention that the source of its petal shapes and exact spacing came from in-house fabrics defendant had on hand, I reject entirely defendant's contention that the spacing concept and size, the same selection of colors in the flowers,[2] and the same basic size and arrangement of the stems and placement of leaves on the stems, were the result of independent creation. To conclude otherwise would be to find coincidence that defies belief.[3] In addition, not only is there such substantial similarity as to compel an ordinary lay observer to overlook the dissimilarities and regard the two designs as essentially the same, but also access is conceded, not only in the general awareness by defendant's designers that the plaintiff's design was in the marketplace, *see* Transcript at 103, 136, but even more telling, defendant had a section of plaintiff's pink-charcoal cloth in its studio at the time it was designing its own pink-charcoal design and had cut pieces out of plaintiff's cloth for color swatches, *see* Transcript at 135–37. I

---

1. A certificate of copyright registration is prima facie evidence of ownership and validity of the copyright. 2 M. Nimmer, *Nimmer on Copyright* § 7.16[D] (1987). I reject defendant's contention at oral argument that plaintiff's copyright is not valid because plaintiff failed to record the assignment of the design. I find that the bill of sale for the design, which plaintiff purchased from a designer, constituted a valid assignment and was recorded as required under 17 U.S.C. § 205(d).

2. Pink, mauve, light and dark gray and white, *see* Exhibits 1, 7 and L; Transcript at 101 and 171.

3. Defendant's witnesses conceded virtual identity of the colors and of the stem and leaf arrangement, *see* Transcript at 101, 122.

**20**

therefore conclude that one or more of defendant's personnel had plaintiff's "Athena" pink-charcoal before her in the conception of defendant's "February." Phrased in the language of the law, "February" would not have been what it is without defendant having availed itself of "Athena." *See Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 n. 2 (2d Cir.1977) (even if defendant presents evidence of independent creation, no explanation other than copying is reasonable if there is substantial similarity between the two works); *Arrow Novelty Co., Inc. v. Enco National Corp.*, 393 F.Supp. 157, 160 (S.D.N.Y.1974) (where defendant's infringing work "[bore] such a remarkable resemblance to plaintiff's expression of the idea as to render the inference of copying inescapable," court considered defendant's independent creation contention "unbelievable"), *aff'd mem.*, 515 F.2d 504 (2d Cir.1975).

Next, although Ametex's subsequent reproductions of Imperial's design in different colors cause them not to bear the same degree of similarity to Imperial's design as the charcoal pattern, given the finding of initial infringement by such clear and convincing evidence defendant cannot avoid responsibility for further infringement because its reproductions of the design in other color combinations, viewed in a vacuum, are not so obviously similar. *See Novelty Textile Mills*, 558 F.2d at 1094 n. 6 ("once a copyrighted design is found to have been copied, mere changes in the color scheme on the copied design would ordinarily not protect the defendant from a claim of infringement").

Accordingly, Imperial's preliminary injunction restraining defendant's continued sale of its infringing fabric design in whatever color combinations is granted. Plaintiff has demonstrated both a likelihood of success on the merits, *see supra*, and possible irreparable injury. *Le Sportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 74 (2d Cir.1985). The continued presence of defendant's cheaper fabric on the market will necessarily injure sales of Imperial's own design and create a loss of good will in the industry. Such lost sales are virtually impossible to establish hereafter.

The foregoing is so ordered; the parties may submit a formal order on notice.