**GUND, INC., Plaintiff,**

v.

**RUSS BERRIE AND CO., INC., Defendant.**

**No. 88 Civ. 2929 (VLB).**

United States District Court, S.D. New York.

Dec. 12, 1988.

George Gottlieb, Jane Shay Wald, Gottlieb, Rackman & Reisman, New York City, for plaintiff Gund, Inc.

Philip H. Gottfried, Eugene Berman, Amster, Rothstein & Ebenstein, New York City, for defendant Russ Berrie and Co., Inc.

## ORDER

VINCENT L. BRODERICK, District Judge.

Magistrate Grubin's comprehensive Report and Recommendation is approved, and adopted as the opinion of the court. Plaintiff shall submit, on three days' notice, a proposed preliminary injunction with appropriate provision for a bond. The parties are invited to agree on the amount of the bond: if there is no agreement the parties shall contact my chambers and a prompt conference will be held.

In the interim, Russ Berrie and Co., Inc., its agents, servants, employees, related companies, subsidiaries, and all persons in active concert and privity with them, are enjoined from directly or indirectly manufacturing, displaying, vending, distributing, selling, promoting or advertising, and from causing others to manufacture, display, vend, distribute, sell, promote or advertise, its plush ostrich known as Obee.

SO ORDERED.

## REPORT AND RECOMMENDATION TO THE HONORABLE VINCENT L. BRODERICK

SHARON E. GRUBIN, United States Magistrate:

This is an action for copyright infringement brought by plaintiff Gund, Inc. ("Gund") against defendant Russ Berrie and Company, Inc. ("Russ Berrie") with respect to two stuffed animal toys made by Gund, a dog named Muttsy and an ostrich named Popover. This report concerns plaintiff's motion for a preliminary injunction with respect to the second count of its first amended complaint, the alleged infringement of plaintiff's copyright in Popover by defendant's ostrich, Obee.[1] Evidentiary hearings were held on June 22, 27, 29 and July 6, 1988. At defendant's request, the testimony of an additional witness, taken by deposition on August 12, 1988, was also considered. For the reasons set forth herein, I respectfully recommend that your Honor issue the preliminary injunction sought by plaintiff restraining defendant from continuing to sell Obee. The following are my proposed findings of fact and conclusions of law.

### BACKGROUND

Gund, a privately-held New Jersey corporation, has been in the business of designing, having manufactured, importing and selling stuffed plush toys since 1898. ("Plush" is the soft material used in making stuffed toys.) Gund designs all of its products through its own design department and attempts to maintain strong quality controls. It sells its products for retail almost exclusively to what are described as "upscale" department stores across the United States and in many foreign countries. Gund apparently enjoys a good reputation with retail establishments and consumers.

The defendant Russ Berrie is a publicly-held corporation also headquartered in New Jersey which designs and markets a large selection of "impulse gifts" to retail stores across the country and abroad. Its product line consists of over 11,000 items, including stuffed animals which fall under the domain of its Plush Division, and it employs design staffs at its headquarters and throughout the world. The defendant says it does not make "toys" and refers to its stuffed animals as "gifts." Russ Berrie's customers are giftware retailers, such as card and gift stores, pharmacies, florists, military post exchanges, chain stores and gift shops located in resorts, hotels, colleges, airports and hospitals.

Popover is a stuffed plush ostrich introduced by Gund to the toy trade in the summer of 1986 as part of Gund's "Spring 1987" product line which was intended for delivery to Gund's retail customers commencing in December of 1986. The United States Copyright Office issued Certificate of Copyright Registration No. VA 236–211 for Popover under effective date of July 15, 1986, showing June 23, 1986 as the date of first publication. The toy is manufactured with a sewn-in label carrying the company name and an appropriate copyright notice. Popover was shown in the Gund Spring 1987 catalog, which was distributed in July and August of 1986, and in all subsequent Gund catalogs to date: Fall 1987, Spring 1988 and Fall 1988. About 20,000 copies of these catalogs are regularly distributed by mail, through Gund salespeople and at trade shows. Popover has been on display at trade shows and in Gund's showrooms in various cities since its introduction, including the New York Gift Show in August of 1986 and the New York International Toy Fair in February of 1987. Popover was also shown as one of twelve Gund stuffed toys in a 30–second television commercial shown nationwide at various times since November of 1986. Gund has sold over 18,000 Popover toys at the wholesale level since its introduction in 1986 for more than $160,000 and, as Gund considers Popover one of its most successful products, the company intends to continue to market and sell it.

---

1. The original complaint contained only the claim of copyright infringement of Muttsy, and it is my understanding my recommendations with respect to the earlier preliminary relief sought thereon are currently pending before the court.

Popover (P.Ex. 50) [2] is a soft, cuddly item with an egg-shaped body, two legs, two wings and a tail. It has a long neck protruding up from the front of the body and a round bulbous head with two eyes and a beak. Its normal position is a sitting one with the two legs protruding frontward. It is what I would describe as a medium-sized toy: the body measures about eight inches in length, and its height from the top of the head to the bottom of the body is about nine inches. Popover is meant to be a baby ostrich, described in plaintiff's promotional literature as "just hatched," and attempts to achieve a "wet-look" as newly-born from the egg by the use of a curly, tumbled plush material for the torso. This material is brownish in color with white at the tips of the strands of "fur." The wings are covered in the same material as they come out from the body, but the outer half of each wing is all white. The tail is also white, as are the neck and head. The beak and legs and feet are brown (a different brown from that in the body). The beak is short and rounded and made of plush, and the legs culminate in large feet of three toes made of the same plush as the beak. It is fair to say that Popover is a very cute item, and its appeal (in my opinion) lies largely in the nature of its soft, inviting facial appearance.

Popover was the brainchild of Gund's design director, Rita Raiffe, and designer, Susan Procino. In about April 1986 they discussed new characters to include in Gund's Spring 1987 product line and decided to try to develop a soft baby bird of some sort just hatched from an egg. The concept of a big egg led them to think about an ostrich. They thought, however, that real ostriches were quite unattractive in appearance, so they set about to develop a cute, whimsical ostrich instead of a life-like one. Procino, who has been a designer at Gund since 1977 and has developed near one thousand stuffed plush toys, is the person who then designed Popover from start to finish. Two "reference" books at

Gund contained photographs of adult and baby ostriches, *Baby Animals* by Maurice Burton (P.Ex. 5) and *Elephants & Other Land Giants* by Time–Life Films (P.Ex. 6), but Popover was not designed to look like the ones in the books because Procino and Raiffe found them so unappealing. Procino eventually came up with a two-dimensional paper pattern and a sewn sample with which she and Raiffe were satisfied. In May 1986 the two of them took the pattern and sample to Korea, where most of these types of items are apparently manufactured, selected the factory they thought could best produce Popover, and Popover was hatched.

The defendant's ostrich, Obee (P.Ex. 51), came into being in October 1987. Jennifer R. Monson, the defendant's Vice President of Product Development, who has been responsible for the development of 4,000 to 7,000 items for Russ Berrie's plush line, 1,000 to 2,000 of which have actually gone into production, testified as to the creation of Obee. In September or October of 1987 she was in Korea with Mr. Russell Berrie, defendant's President. During a meeting with the President of the defendant's Korean division, Mr. Y.B. Lee, Mr. Berrie reviewed sales reports on each item produced by the division. In reviewing a plush item known as Laverne Flamingo, Mr. Berrie mentioned that Laverne was doing very well and asked if Lee could "develop something like Laverne or the next generation of Laverne, because that item was doing very well in the line at the time." (Tr. 115.) The defendant's Korean operations employ designers, pattern-makers and artists. Monson and Berrie left Korea and went to Taiwan or Hong Kong for further business meetings, but returned to Korea ten to fourteen days later. There they reviewed all new items on which Y.B. Lee had been working, and Lee presented a sample of Obee. Berrie liked it and told Lee to obtain a manufacturer, and a few days later the three of them met with a Korean manufacturer and Berrie placed an order for the

---

**2.** "P.Ex." herein refers to exhibits introduced by the plaintiff at the evidentiary hearing and "D. Ex." to those introduced by the defendant. The reference "Tr." will refer to pages of the tran-

script of the hearing which is contained in four volumes under the four separate dates but consecutively paginated.

production of Obee and its shipment to various of defendant's distribution centers in the United States and other countries. Monson's contemporaneous notes of the meeting indicate that it was a Ms. Lee, who is the head pattern-maker and designer in the Korean office, who designed Obee. (D. Ex. F.) Obee became part of the defendant's "Caress" line of plush items, which uses higher quality fabrics and stuffings than are used in some other stuffed items.

After this litigation commenced, Monson called Y.B. Lee in Korea and asked him to send to her the paper pattern for Obee, and she told him that she wanted to know "anything that he used in developing Obee, all materials that he used to develop Obee." (Tr. 155.) Lee responded by sending the pattern of Obee and the patterns of two other plush ostriches that had been previously made by the defendant's Korean division, Olivia (D. Exs. E, J) and Henrietta (D. Exs. P, I), indicating that they had been used as "research" material in developing Obee. (Tr. 156.) Olivia had first been produced in November 1982 and Henrietta in November 1984, but neither is currently in Russ Berrie's line nor was it at the time Obee was created.

It is the defendant's contention herein that Obee was developed from Olivia and Henrietta by Y.B. Lee and his employee Ms. Lee. During the hearing, I expressed to defendant's counsel my view that Mr. Lee or Ms. Lee would have been a more appropriate witness as to Obee's creation than Monson who concededly was not present when the Lees did their work and knew only what was told to her about it by Mr. Lee after this litigation was commenced. Defendant's counsel responded that Mr. Lee had a job to do in Korea and that Ms. Lee was a very timid lady who did not speak English and would be afraid of being thrown in jail. However, thereafter Mr. Lee's deposition was taken as part of the discovery on the merits of this action, and defendant requested that the transcript of his testimony be made part of the

record herein. Although I believe it questionable whether defendant should have been permitted to submit this deposition testimony of one of its own corporate officers after the close of the hearing, I have nevertheless, giving defendant as to whom the injunction is sought every opportunity to defend against it, read the testimony and taken it into consideration.[3] Lee's recounting of the meetings in Korea with Monson and Berrie leading to the creation of Obee follows Monson's exposition almost precisely. He testified that Berrie asked him to come up with a bird that would sell well like Laverne Flamingo. He additionally testified that he then spoke to his designer Ms. Lee and told her that Olivia had been a good product and she should make "an ostrich like that type of bird with plush." (Transcript of deposition of Y.B. Lee taken August 12, 1988, filed as docket entry 43, hereinafter "Lee deposition," 88.) He had no explanation as to why he focused on an ostrich. Thereafter, he did not see Ms. Lee work on the project or make Obee; indeed, he did not see Obee or have anything to do with its creation until Ms. Lee brought the finished Obee sample to the second meeting with Berrie and Monson ten to fourteen days later. It appears, thus, that Mr. Lee has no personal knowledge of how Obee was made, as Obee was entirely the creation of Ms. Lee. When Monson called him after this litigation was commenced, he asked Ms. Lee to tell him how she made Obee. She gave him the patterns of Olivia and Henrietta which she said she used "as a reference." (Lee deposition 105.)

## DISCUSSION

### Standards for Relief

The standard governing when a preliminary injunction should issue in this circuit is well settled. The party seeking the injunction must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the case or (2) sufficiently serious questions going to the merits as to

---

**3.** This deposition was recently taken not in Korea, but in New York. It would have been far preferable to me to have had the opportunity to hear live testimony and view the witness' demeanor than to read his deposition transcript, but I was not informed that he had been here testifying until he had returned to Korea.

make them a fair ground for litigation and a balance of hardships tipping decidedly towards that party. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). *See also Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985). With respect to irreparable harm, it is also settled that in copyright infringement cases such harm is normally presumed upon a *prima facie* showing of infringement. *See Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1094 (2d Cir.1977); *Wainwright Securities Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978); *Robert Stigwood Group Ltd. v. Sperber*, 457 F.2d 50, 55 (2d Cir.1972); *Concord Fabrics, Inc. v. Marcus Brothers Textile Corp.*, 409 F.2d 1315, 1317 (2d Cir. 1969); *Rushton v. Vitale*, 218 F.2d 434, 436 (2d Cir.1955); *Houghton Mifflin Co. v. Stackpole Sons, Inc.*, 104 F.2d 306, 307 (2d Cir.1939); *R. Dakin & Co. v. Charles Offset Co., Inc.*, 441 F.Supp. 434, 439 (S.D.N.Y.1977); *American Greetings Corp. v. Kleinfab Corp.*, 400 F.Supp. 228 (S.D.N.Y. 1975).

To make a *prima facie* case of copyright infringement the plaintiff must show (1) ownership of a valid copyright and (2) copying by the defendant. Defendant Russ Berrie does not contest the ownership or validity of Gund's copyright in Popover for the purposes of this motion, so our focus herein is on the second element of a copyright claim, the alleged copying of Popover by the defendant. Because direct proof of copying is unusual, a plaintiff may establish it circumstantially by showing that the defendant had access to the plaintiff's copyrighted work and that the defendant's work is "substantially similar" to it. *See, e.g., Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 499 (2d Cir. 1982); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d at 1092; *Gund Inc. v. Fortunoff Inc.*, 3 U.S.P.Q.2d (BNA) 1556, 1557 (S.D.N.Y.1986) [1986 WL 14912]; *American Greetings Corp. v. Easter Unlimited, Inc.*, 579 F.Supp. 607, 613 (S.D.N.Y.1983). Defendant Russ Berrie concedes, as it must, that it had access to

Popover given the availability and dissemination of Popover, plaintiff's catalogs and its advertising. This narrows our focus to the remaining element of whether Popover and Obee are "substantially similar." If they are not, that ends our inquiry. If they are, however, the defendant can still rebut the inference of copying by showing that its product was independently created despite its similarity to the plaintiff's work. *See, e.g., Eden Toys*, 675 F.2d at 501; *American Greetings Corp.*, 579 F.Supp. at 611. Plaintiff Gund has attempted to show that not only is Obee substantially similar to Popover but that it is so substantially similar that it could not have been made without actual copying of Popover's design pattern. Defendant Russ Berrie contends, on the other hand, that Obee and Popover are not substantially similar and that Obee was independently created by its employees in Korea.

Whether one work is substantially similar to another is determined by the "ordinary observer" test, that is, in Judge Learned Hand's definition, whether the "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960). The question as rephrased somewhat more broadly by the Second Circuit is "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Ideal Toy Corp. v. Fab–Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir.1966). The Court of Appeals has explained that to be a "copy" does not mean every detail need be the same, but "[t]he key to the 'ordinary observer' test is therefore the similarities rather than the differences," because "[o]nly a slavish copy would have no differences." *Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d at 1093 & n. 4. Of course, copyright protection extends only to a work's particular expression of an idea and not to the idea itself, and "the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying." *Durham*

*Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir.1980). *See also Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d at 500; *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90–91 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). Thus, anyone can make a stuffed ostrich, and all ostriches may share certain characteristics inherent in the idea of an ostrich, such as the fact that they have two eyes, two legs, two wings and a beak. The issue here becomes whether the essential "expression" of Obee—which flows not from the commonality of characteristics of ostriches nor characteristics of soft, plush toys but from the way in which the characteristics have been designed and projected to produce a whole "look"—is such that it must be seen as copied from Popover.

*Substantial Similarity*

I find Obee to be, indeed, substantially similar to Popover. Each bird has a round head sewn onto a tubular neck that is curved slightly backward. The heads and necks are white on both. Both birds have two-toned dark beady eyes, set into the side of the head (although Obee's eyes are placed closer to the beak than Popover's and the pupil is encircled in dark gray while Popover's is in a lighter bluish-gray). The beaks are both soft and rounded and in similar proportion to the heads. Both beaks are brown (although Obee's beak is a dark brown and Popover's tan). Both bodies are egg-shaped with the wings protruding from the same approximate position on the torso. Defendant's Obee's body is not made of the tumbled material of Popover's "wet look." It is, however, similarly although not identically colored in a taupish brown. As with Popover, the brown of the body is a different color from the brown of the beak. Obee's wings are colored the same brown as the torso on their top surfaces, except the "tips," comprising about the back third of the wings, are white, as are the entire undersides of the wings. Popover's wings are similarly of the torso material and coloration as they protrude from it and their tips are white (although the tips appear to comprise at least half of the outer edge of the wing on

both the top and under wing portions). Because the wings on both come to a finish with a burst of white plush, there is a distinctive and similar two-toned effect. Each bird, of course, has a tail placed at the back end of the body, but both are rounded stubby items made of the same white material as that used for the head, neck and wingtips. Although upon inspection one notices the tail shapes are somewhat different, as with the wings the contrast between the white tail and the dark of the body creates a like distinctive effect. Obee's legs, like Popover's, dangle down from approximately the same position on the "chest" and also culminate in feet of three rounded toes. They protrude forward from the body to create the same "sitting" effect as Popover has when resting on a surface and the same splayed effect when held up. Obee's legs are slightly longer and thinner in proportion to the body than Popover's and the toes lack embroidered stitching appearing on Popover's. However, more significant than those slight dissimilarities is the fact that the legs and feet of Obee are brown—not the same brown as the body, but the same brown as the beak—and they are made of the same type of plush as the beak. This scheme, where only the beak and leg/feet pieces are of the same brown plush, is the same on Popover.

Simply taking the birds from the neck up, the combination of rounded heads, curved tubular necks, soft, almost identically shaped and proportioned beaks, and identical color schemes makes the two birds strikingly similar in appearance. The faces have the same cute look and feel. When we add the rest of the bodies to this look created by that combination of items—the egg-shaped torsos that are similarly colored, the white-tipped wings, the stubby white tails, the splayed legs and wide three-toed feet of the same plush and same color as the beaks and the identical postures as they sit side-by-side—the conclusion seems inescapable to this ordinary lay observer of ostriches that Obee has to be recognized as "having been appropriated"

from Popover. *Ideal Toy Corp. v. Fab–Lu Ltd.*, 360 F.2d at 1022.

The defendant has gone to great lengths to point out the differences between the two birds. The main difference is the tumbled curly plush of Popover's torso used to create a purported just-hatched wet look compared to a more regular smooth plush of Obee. Another apparent difference, when the birds are placed side-by-side, is that Obee is slightly smaller overall than Popover.[4] I find the other greatest difference to be the placement of the eyes—farther down on the "forehead" and closer to the beak on Obee. Defendant also points to the following additional dissimilarities: the colors of the browns, the slightly longer legs of Obee and lack of stitching on the feet, the slight difference in tail shapes, the slight difference in wing shapes and the proportions of white and brown on the wings, and the difference in the eye coloration scheme. Defendant also claims that one can observe that Popover's back contains a hump which does not appear on Obee, that Popover's white is a creamier color than Obee's and that Popover's feet are slightly bigger in proportion to the legs. My eyes do not observe this last group of alleged differences as I look at the two birds, but, even assuming some other ordinary observer would see them, they are immaterial, for all of the differences in combination do not change the fact that the birds are strikingly similar in their creative expression and "total concept and feel." *Warner Bros. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 241 (2d Cir.1983) (quoting *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir.1970)).[5] As the court found in comparing bunnies in *Dollcraft Industries, Ltd. v. Well–Made Toy Manufacturing Company*, I find that these differences are too insignificant to change the overall similarity in the birds' appearances:

Although the plaintiff has employed a cream colored body with a darker cream underbelly and has accented its toy by a pink tail and pink contouring around its eyes and ears and has used a tear drop shaped eye patch, and although the defendants have varied their toy by employing a pink body with a darker pink underbelly and have accented their toy in the same exact manner as plaintiff but by using a white tail and white contouring around the eye and have used a round plastic eye, *these differences are minimal and have little or no effect on the untrained eye's impression that both have captured the same visual character and non-verbal expression of an idea.*

479 F.Supp. 1105, 1110 (E.D.N.Y.1978) (emphasis added). In *R. Dakin & Co. v. A & L Novelty Co.*, 444 F.Supp. 1080, 1082 (E.D.N.Y.1978), where the color scheme of two stuffed hippopotamus toys was the same but the particular colors differed, the defendant's product was smaller, lacked the tail of plaintiff's, had larger ears, had nostrils of a different shape and had eyes constructed of different material and placed in such a different way as to give a wholly separate look to its face, the court found the effect of the differences minimal to the ordinary observer.

Defendant's strained listing of minor dissimilarities reinforces what is apparent to the plain eye—that one has to go out of one's way to notice them in the light of the strikingly similar impressions of the birds. As mentioned above, some of the differences defendant claims exist are not just generally unnoticeable to the casual observer, but not even apparent to me upon inspection. Were Obee truly dissimilar from Popover, there would be no need to cite distinctions that border on the invis-

---

4. Interestingly, this smaller size apparently results not from a difference in underlying design but rather simply from the material used. One of plaintiff's exhibits was a bird constructed from the pattern of Obee but using the plush of Popover. The result was a bird more of Popover's size appearing, in fact, slightly larger than Popover.

5. Defendant also contends that whereas Popover's neck curves backward, Obee's curves forward. It is incomprehensible to me how this argument can be made since it has to be crystal clear to any observer that Obee's neck simply is not curving backwards but, rather, curving the same way as Popover's.

ible. Moreover, "[d]issection of dissimilarities is inappropriate because it distracts a reasonable observer from a comparison of the total concept and feel of the works." *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir.1987). Rather, as Judge MacMahon put it, "we look to the overall appearance of the dolls to see if the combination of [similar] details creates a general impression of substantial similarity." *Fisher–Price Toys, Division of the Quaker Oats Co. v. My–Toy Co., Inc.*, 385 F.Supp. 218, 220 (S.D.N.Y.1974). *See also Malden Mills, Inc. v. Regency Mills, Inc.*, 626 F.2d 1112, 1114 (2d Cir.1980); *Ideal Toy Corp. v. Fab–Lu Ltd.*, 360 F.2d at 1023; *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d at 489. In the end, "[g]ood eyes and common sense may be as useful as deep study of reported and unreported cases, which themselves are tied to highly particularized facts." *Couleur Int'l, Ltd. v. Opulent Fabrics Inc.*, 330 F.Supp. 152, 153 (S.D.N.Y.1971). Simply viewing Obee and Popover, the observer sees the same unique and distinctive look, the same posture, the same mood. As in *Dollcraft Industries Ltd. v. Well–Made Toy Manufacturing Co.*, 479 F.Supp. at 1117, we are faced with "a duplication in total of the plaintiff's expression," or as Judge Hand put the test, the same "aesthetic appeal." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d at 489.

Defendant has attempted to argue that any similarities this court finds result from the natural characteristics of ostriches and are, thus, not protected by the copyright laws. *See, e.g., Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d at 917; *Reyher v. Children's Television Workshop*, 533 F.2d at 90–91. Thus, defendant introduced into evidence a large reference work entitled *The Encyclopedia of Birds* published by Facts on File, Inc. (1985) which contains photographs of ostriches. (D. Ex. AA, pp. 18–21.) I have reviewed those photographs (as well as the depictions of ostriches con-

tained in the two pictorial books that plaintiff's designers had reviewed prior to creating Popover (P. Exs. 5 and 6)). I find defendant's contention almost ludicrous. The ostriches depicted in defendant's *Encyclopedia* only add support to the plaintiff's cause. To be sure, they all have eyes, beaks, egg-shaped bodies, wings, legs and feet. But so do most birds I know. The expression of these characteristics in Popover, which is, of course, what is protected by copyright, results in an item that is far different from its pictorial ostrich colleagues. Indeed, the only other ostrich I have seen that looks like Popover out of all the exhibits is Obee. The ostriches in nature as depicted in defendant's reference work are relatively ugly and mean-looking characters. They are feathery creatures with pointy beaks, ovalish heads, spindly legs, expansive, layered wings, expansive layered tails and feet with two sharp-clawed separated toes.[6] They come in a variety of colorations, but none shares the color scheme of Popover. The fact that Obee's color scheme, soft rounded beak, round head, stubby tail, three-toed fat feet and general proportions are so precisely like Popover's and unlike those of the ostriches pictured serves to confirm the inference of copying. Popover is very different from a real ostrich—and so is Obee. Olivia Ostrich (D. Ex. E) and Henrietta Ostrich (D. Ex. P), the ostriches previously marketed by defendant that will be further discussed below, are more like ostriches in nature than is Obee with their pointy beaks, ovalish heads and feathery appearance. Contrary to the defendant's contention, this is not a situation like that in *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir.1982), where the court found with respect to two snowmen who apparently bore little resemblance to each other that any similarity "would appear to the ordinary observer to result solely from the fact that both are snowmen." Here, the contrary is true. The similarities have

---

**6.** Defendant seems to have mistakenly cited in its *Encyclopedia* pictures of another species of bird as well, the rhea, which is a relative of the ostrich. The rhea appears to have three toes, while the ostrich is apparently unique in having two-toed clawed feet.

to have come as a result of something other than nature.[7]

## Independent Creation

The defendant contends that even if I conclude, as I have, that Obee is substantially similar to Popover, it has shown that Obee was independently created by its employees and, therefore, has rebutted the inference of copying created by the similarity. I disagree. I find this contention of independent creation not supported by the credible record. Defendant bases its arguments largely on the testimony of Ms. Monson concerning her meetings and correspondence with Mr. Y.B. Lee of defendant's Korean offices. According to Ms. Monson, Mr. Russell Berrie asked Mr. Lee to develop a product like Laverne Flamingo who had been selling well in the defendant's product line, and Mr. Lee came up with Obee. Monson's testimony has now been supplemented by Lee's which, in essence, tells the same history but confirms that Obee was created by Ms. Lee, the pattern-maker on Mr. Lee's staff. After commencement of this litigation, Monson asked Mr. Lee for everything used in the development of Obee. He, in turn, asked Ms. Lee who told him that she had used two of defendant's prior works, Olivia Ostrich (D. Ex. E) and Henrietta Ostrich (D. Ex. P) as "research." (See p. 1017, *supra.*)

Plaintiff objected at the hearing and reiterates its objection to Monson's testimony concerning her meetings with Mr. Lee and Mr. Berrie in Korea as hearsay. I overruled the objection at the hearing, since I believe her testimony as to what was said, rather than the truth of the matters asserted, is admissible. Plaintiff also objects

now to the admission of Mr. Lee's deposition testimony. In any event, however, I find the testimony of both largely irrelevant to the issue before us for it is not probative of independent creation. The testimony was simply that Mr. Lee was asked to develop an item and two weeks later he and Ms. Lee presented Obee. Both Monson and Mr. Lee readily admitted that neither was present when Obee was created nor do they have any personal knowledge of what was used to develop it. Mr. Lee himself does not know how to sew and has never made a pattern. Moreover, I find the proposition that Olivia and Henrietta were used as models in some way, rather than supporting defendant's claim of independent creation, negates it.[8] Olivia is an ostrich with a non-bulbous but oblong head, a long, pointy beak and large flapping, feathery wings. The beak, legs and feet are bright orange, the body black and the wings a mixture of black and white with white feathery tips. Henrietta also has an oblong head, a large, long, curved beak and a body of bright blue feathers and small feet with pointed toes. Her head, neck, wings, legs and tail are beige, her beak is purple and her feet blue. She sports a pink sweatband around her forehead and pink leg warmers. But I am not articulate enough to describe in how many ways Olivia and Henrietta are manifestly different from Obee and Popover. Your Honor will, of course, view all these birds yourself, and for purposes of this report, I have attached photographs of Popover, Obee, Olivia and Henrietta. Suffice it to say that when one compares Obee to Olivia and Henrietta and then compares him to Popover, it is impossible to conclude that he was based on Olivia and Henrietta rath-

---

**7.** I was tempted at this point to quote the learned Honorable Kevin Thomas Duffy of this court who said, in another context, that "only an ostrich could make the claim defendant does," *Perma Research & Dev. Co. v. Singer Co.,* 402 F.Supp. 881, 889 (S.D.N.Y.1975), *aff'd,* 542 F.2d 111 (2d Cir.), *cert. denied,* 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976), but it occurred to me that an ostrich would probably be the least likely to make such a claim because he

would know what the members of his family look like.

**8.** Plaintiff also objected to admission of the patterns of Olivia and Henrietta sent by Lee (D. Exs. I, J) and to admission of Olivia herself (D. Ex. E), who was made for purposes of this hearing since she had not been in production for several years. Given my conclusions herein that these exhibits work in plaintiff's favor rath-

er than Popover.[9] I found Monson's efforts to describe Obee's similarities to Olivia and Henrietta and his dissimilarities to Popover severely affected her credibility.

While it may very well be the case that Ms. Lee made some use of the patterns on hand of Olivia and Henrietta in her endeavors to create Obee, such use does not negate the extremely strong inference that she copied the appearance of Popover. Obee does not look like Olivia and Henrietta; he looks instead like Popover. The defendant has not even come close to meeting its burden of showing independent creation. Indeed, there is no evidence as to how Ms. Lee sat down and came up with Obee. All we know is that she said she used Olivia and Henrietta "as a reference," and even if we assume that she did use them (despite the fact that the testimony is hearsay), there is no evidence whatsoever as to how she used them or as to whether she used Popover or a picture of Popover as well. Mr. Lee testified that Russ Berrie's offices in Korea maintain Gund's catalogs, and apparently they had the 1987 catalog that would have shown Popover as a new Gund product. (Lee deposition 32.) Although he testified that he did not consult a Gund catalog with respect to the creation of Obee, we have no information as to what Ms. Lee consulted or the extent to which Mr. Lee had studied the catalog prior thereto. (Mr. Lee also testified that

he attended at least one toy show in 1987 at which the evidence establishes Popover was displayed by Gund.)[10]

■ There is good authority for the proposition that in the absence of evidence of independent creation, a finding that defendant did not copy plaintiff's work would be clearly erroneous. *Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2d Cir. 1984); *R. Dakin & Co. v. Charles Offset Co., Inc.*, 441 F.Supp. 434, 439 (S.D.N.Y. 1977); *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970). Although defendant contends that it has presented evidence of independent creation, virtually none of the evidence is probative. Ms. Lee, the person who purportedly created Obee on her own, was never heard from, not even by affidavit. Under these circumstances, a negative inference might be drawn and defendant's contention given little consideration at all. *See, e.g., Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 517 F.Supp. 900, 904 (S.D.N.Y.1981); *Baldt Corp. v. Tabet Manufacturing Co., Inc.*, 412 F.Supp. 249, 256 (S.D.N.Y.1974), *aff'd*, 517 F.2d 1395 (2d Cir. 1975); 3 M. Nimmer, *Nimmer on Copyright* § 12.11[D], at 12–85 (1988) ("In offering evidence of independent creation it has been said that whenever possible the defendant should produce as a witness the author whom defendant claims created his work, so that he may directly testify as to

---

er than against, I suspect plaintiff will not press the objections.

**9.** Similarly, the much smaller bright pink Laverne Flamingo looks nothing like Obee except that they both resemble birds (D. Ex. Q).

**10.** At Mr. Lee's deposition he produced the original of a photograph of the sample Obee that had been made by Ms. Lee and shown by her to Monson and Berrie at the second meeting in Korea (P.Ex. 109). Interestingly, the torso is not the brown/taupe of Obee, but a black with some gray or white mixed in, and the tops of the wings are also entirely of this blackish color without the white tips of Obee or Popover. Mr. Lee testified that in the meeting with Monson and Berrie they asked that the color of the body be changed. (Lee deposition 75–77.) Defendant contends this evidence shows Obee was indeed based on Olivia whose torso is black rather than on Popover, and plaintiff intimates that defendant changed the color so that Obee would more closely simulate Popover. I find, since

Mr. Lee could not remember the reason for the color change or who at the meeting came up with the idea, that it is impossible to draw any conclusion from it one way or the other. I do find it interesting, however, that Monson made no mention of the fact that the color was initially black when shown to her and Berrie. Her notes of the meeting about which she testified at the evidentiary hearing included this photograph, but it was a photocopy, so the color did not show. And a lack of memory would not appear to explain her omission since she testified at the hearing that she had viewed the original photograph within 30 to 60 days before her testimony. (Tr. 150.) I also find an interesting but, again, inconclusive fact in that, upon examination of the original photograph, it appears the eyes of the original Obee prototype were black pupils surrounded by lighter gray or blue, which is the color scheme of Popover's eyes.

his sources and subject himself to cross-examination"). I have not drawn such a negative inference, however, again giving defendant's contentions all possible consideration and according the evidence that does exist as much weight in defendant's favor as possible.

I find, however, that it is beyond credulity to conclude that Ms. Lee or anyone else on defendant's behalf created Obee independent of Popover. The similarity is simply too great to be a coincidence. That it is claimed Obee was somehow modeled after Olivia and Henrietta only underscores what a remarkable coincidence it would have to be for Obee to have emerged looking almost exactly like Popover and not looking at all like Olivia or Henrietta. For example, why does Obee have the short, plush, rounded distinctive beak of Popover rather than the long, fabric, pointed beaks of Olivia, Henrietta and Laverne? In light of an apparent great variety of beak shapes employed in the manufacture of stuffed birds and the lack of resemblance to an actual ostrich beak, the Obee beak stands unexplained. While the similarity in beak alone, of course, would not carry much significance, all the additional similarities in combination do, producing a bird whose total "look" is so like Popover's that no conclusion can be drawn from the evidence presented but that Obee was copied from Popover. Judge Owen's language in the recent decision of *Imperial Textile Co. of New York, Inc. v. Ametex Fabrics Inc.*, 682 F.Supp. 18 (S.D.N.Y.1987), is appropriate here:

While I accept defendant's contention that the source of its petal shapes and exact spacing came from in-house fabrics defendant had on hand, I reject entirely defendant's contention that the spacing concept and size, the same selection of colors in the flowers, and the same basic size and arrangement of the stems and placement of leaves on the stems, were the result of independent creation. To conclude otherwise would be to find coincidence that defies belief.

682 F.Supp. at 19 (footnotes omitted). Similarly, in *R. Dakin & Co. v. A & L Novelty Co.*, the court found:

The testimony of Ernst Gruber, defendant's designer, that he independently created the designs for defendant's [toys], without ever having seen plaintiff's toys, is simply not credible. There is almost no similarity between the pictures and cards that Mr. Gruber claimed to use to develop the designs for [defendant's] stuffed toys and the final products. On the other hand, the similarity between [defendant's] toys and [plaintiff's] toys is too striking to be coincidental.

444 F.Supp. at 1084. *See also, e.g., Arrow Novelty Co. v. Enco National Corp.*, 393 F.Supp. 157, 160 (S.D.N.Y.1974), *aff'd*, 515 F.2d 504 (2d Cir.1975) ("The defendant's expression of the idea, *i.e.*, the specific layout and design of the tray, bears such a remarkable resemblance to plaintiff's expression of the idea as to render the inference of copying inescapable and the contention of independent creation unbelievable."). In *Eckes v. Card Prices Update*, 736 F.2d 859 (2d Cir.1984), the Court of Appeals wrote:

There was a scarcity of credible, nonselfserving proof in the record of independent creation by appellees. Lewis testified that he did not copy from the Guide, but the district court justifiably found that appellees' testimony as to the source of its premium price list was "evasive." The list of 5,000 premium cards in both works is acknowledged to be substantially the same, and we believe that it was impossible for appellees to produce the same list without copying.

736 F.2d at 863.

In the cases cited above, the claims of independent creation were rejected based on the products' similarities even though the purported "independent creators" testified, to a greater or lesser extent, as to their sources and methods of creation. Here, we have no testimony at all from Ms. Lee nor even from anyone who observed her method of creating Obee. The mainly hearsay testimony of defendant's interested witnesses which is not even probative is clearly insufficient to rebut the inference of copying arising from the substantial similarity between the ostriches.

There is authority for the proposition that where, as here, substantial similarity and access have been established and a plaintiff has presented persuasive evidence as to its own original creation, the burden on the defendant to show independent creation is that of "strong, convincing and persuasive evidence." *Mode Art Jewelers, Co. v. Expansion Jewelry, Ltd.*, 199 U.S.P.Q. (BNA) 329, 340 (S.D.N.Y.1977); *see also* 3 M. Nimmer, *Nimmer on Copyright* § 13.01[B], at 13–9; § 12.11[D], at 12–85–86 (1988). But regardless of the standard of proof that it might be appropriate to apply under other circumstances, defendant herein has thus far failed to meet even the most minimal burden that could rebut the inference of copying.[11]

*Irreparable Harm*

■ As indicated earlier, that plaintiff will suffer irreparable harm if a preliminary injunction does not issue is normally presumed in a copyright case if a *prima facie* case of infringement is established as it has been here by proof of plaintiff's ownership of a valid copyright, defendant's access to plaintiff's product and substantial similarity. (See pp. 1017–18, *supra*.) It is generally recognized that continued sales of the defendant's product necessarily injures the plaintiff's sales and creates a loss of good will and that "lost sales are virtually impossible to establish hereafter." *Imperial Textile Co. of New York, Inc. v. Ametex Fabrics Inc.*, 682 F.Supp. at 20.

Here, in addition to the irretrievable harm of lost sales, Gund's Vice–President explained that Gund's customers know that the company vigorously protects its copyrights against "knock-offs." Plaintiff presented self-serving but uncontroverted evidence that the company is known for its unusual design of stuffed animals and use of high quality materials and workmanship and that its products consequently are able to sell for a price ten to twenty percent above that of its competition. That harm to plaintiff's reputation in these areas would result from the continued availability and marketing of the strikingly similar and lower-priced Obee is obvious. Defendant has rather half-heartedly submitted evidence to show that it would be harmed by the entry of an injunction, but that evidence—that defendant would have to modify its order-filling system to reflect that Obee is no longer available, that Obee would have to be removed from any of defendant's showrooms where it might be on display, that defendant's reputation for filling orders promptly could be damaged and that the current inventory of Obee, valued at June 15, 1988 to be 7,000 units worth $42,000, could be rendered useless—establishes nothing more than the routine effects of an injunction anytime one is is-

---

11. It is plaintiff's contention that Obee could not have been made unless defendant copied the very design pattern of Popover in each of its component parts, presumably by having an actual Popover, taking it apart and duplicating the construction. Plaintiff draws this conclusion from its analysis of the configuration and construction of each of Obee's pieces. In an attempt to prove this contention, plaintiff has presented a variety of evidence, including samples of Popover and Obee turned inside out with their stuffing removed and a set of corkboards displaying each component of the two birds side by side (*e.g.*, the beak, the neck, the tail, etc.) in their cut-out paper pattern pieces and actual plush finished product. Gund's Procino testified that while similar configurations of one or two components of Obee and Popover might be a possible coincidence, that each of Obee's components was made essentially the same way as Popover's "would be tantamount to me walking in and me guessing your social security number." (Tr. 351–52.) Defendant, on the other hand, to counter this contention, offered testimony of its assistant director in plush development and demonstrative exhibits she had constructed. Her testimony was to the effect that, rather than each of Obee's component pieces being an exact duplicate of Popover's, each had so many differences that it had to be concluded that no copying was done.

I am unable to make the finding plaintiff urges of deliberate physical copying by defendant of plaintiff's actual pattern based on the evidence at this time. While I certainly believe Obee was copied from Popover as I have made clear herein, it may have resulted from defendant's observation of a picture of Popover or of the actual toy without a physical examination of its innards. On the other hand, I am unable as well to conclude as defendant wishes I do that the evidence definitively negates that possibility. The parties will be free, of course, to present further demonstrative evidence and any expert testimony they wish at the trial of the merits of this action.

sued against a party. Here, moreover, since defendant apparently markets thousands of items and Obee represents not even one percent of sales of its plush products, the disruption of business and damage to sales would be relatively small. (Tr. 252–54.) In *Dollcraft Industries, Ltd. v. Well–Made Toy Manufacturing Co.*, the court said the following in the face of a claim by the defendants that a preliminary injunction would put them virtually out of business:

> [T]here is absolutely no evidence that an injunction might work an injury to the defendant out of proportion to the damages which might result to the plaintiff by failure to issue the requested preliminary injunction. Indeed, defendants' statement is severely undercut by the fact that Well–Made sells approximately one hundred other toys dissimilar from the five accused toys. Consequently, I fail to see how the defendants' business will be ruined or even handicapped by the granting of the requested injunction which is directed to only five of its toys.

479 F.Supp. 1105, 1117 (E.D.N.Y.1978).

## CONCLUSION

For all of the foregoing reasons, I respectfully recommend that your Honor enter an order enjoining, pending the trial of this action or further order of the court, defendant Russ Berrie and Co., Inc., its agents, servants, employees, related companies, subsidiaries, and all persons in active concert and privity with them, from directly or indirectly manufacturing, displaying, vending, distributing, selling, promoting or advertising, and from offering or causing others to manufacture, display, vend, distribute, sell, promote or advertise, its plush ostrich known as Obee.

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Vincent L. Broderick, to the opposing party and to the undersigned. Failure to file objections within the specified time may waive your right to appeal from any order that will be entered by Judge Broderick. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir.1988); *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir.1983).

Dated: New York, New York

September 6, 1988.

APPENDIX

POPOVER    (Photo is from Plaintiff's Exhibit 52)

OBEE  (Photo is not in evidence)

OLIVIA   (Photo is Defendant's Exhibit N)

1030

<u>HENRIETTA</u>  (Photo is Defendant's Exhibit R)