**GUND, INC., Plaintiff,**

*v.*

**APPLAUSE, INC., Defendant.**

**No. 92 Civ. 8556 (SWK).**

United States District Court, S.D. New York.

Jan. 6, 1993.

Gottlieb, Rackman & Reisman by George Gottlieb, Jane Shay Wald, John Mugno, New York City, for plaintiff.

Gerard F. Dunne, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff Gund, Inc. ("Gund") moves, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for an order enjoining defendant Applause, Inc. ("Applause") and its agents from directly or indirectly manufacturing, vending, distributing, selling, promoting or advertising a stuffed plush toy dog known as "Skippy," alleging that Skippy infringes on Gund's copyright in a stuffed plush toy dog known as "Muttsy". Gund also moves for a recall of the com-

plained of Skippy dog.[1] Applause opposes both motions.

An evidentiary hearing in this matter was conducted by the Court on December 2 and December 3, 1992. For the reasons stated in the Court's Order dated December 11, 1992 and below, Gund's motions are denied.

## BACKGROUND

Gund, a privately-held New Jersey corporation, has been in the business of designing, manufacturing and selling high quality, stuffed plush toys since 1898. To create its toys, Gund utilizes in-house designers, who have been in its employ for many years. Gund's toys are made of fine plush fabrics and stuffed with high quality materials. Other components used, such as eyes, noses, and where applicable, neckties or ribbons, are also of top quality. Gund sells its products for retail almost exclusively to what are described as "upscale" department stores and better gift shops across the United States and in many foreign countries.

Gund developed the design for Muttsy in 1985, and the stuffed toy was first introduced for sale at a Toy Fair in 1986. On February 14, 1986, the Register of Copyrights issued to Gund a Certificate of Registration, No. VA 214–965, covering the Muttsy design. Since 1986, Muttsy has appeared in every fall Gund catalogue and has been actively advertised in mass media, such as New Yorker and other magazines. Muttsy has also been featured in a national television advertising campaign, being seen most recently during the Thanksgiving Day Parade. Muttsy is one of Gund's best selling stuffed toys with more than one million units sold since 1986, accounting for more than 15 million dollars in sales. Presently, Muttsy is available in six sizes,[2] which retail from $12 to $180, and is marketed most frequently in a tan color, although at least two other colors, namely pink and off-

white, are available at different times of the year.

Muttsy is a skinny, floppy, plush toy dog with none of its parts being very rigid. Although Muttsy's design ensures movement and no set position, when dropped on the floor, it generally flops with its face and head drooping downward so that the nose of the animal touches the ground. Its front legs stretch out in front on either side of the nose. Its rear legs bend outwards and stick out to both sides. Because Muttsy is loosely stuffed, it has a distinctly sway back, the middle being considerably lower than both the rump and the front shoulders. The loose stuffing in the midsection also makes it virtually impossible to hold Muttsy off the floor in a horizontal position without drooping. Muttsy's face is generally oval, with a somewhat defined muzzle and forehead. The ears, which have straight bottom edges, are relatively large and hang straight down. Muttsy's nose is made of dull plastic, and its eyes, which are partially covered with fur, are two colors with no eyelids or lashes. The tail is long and starts very low on the rear. Finishing off the look, Muttsy's fur is made of a very fine fiber, giving the dog a smooth, fine texture.

The defendant Applause is also in the gift and toy business, selling stuffed animals, and various other gift items, including mugs, pencils and figurines. Applause sells its products to small businesses, gift stores, florist shops, hotel gift shops, drug stores and major department stores.

Applause began its efforts to design Skippy in approximately September of 1991. As part of the creative process, staff designers at Applause were provided with samples of Muttsy and given instructions to make several specific changes in order to create a new design. The Skippy dog was introduced in June of 1992. It comes in three sizes, and is marketed in three basic colors, black, white and tan.

---

**1.** On November 25, 1992, Gund's prior motion for a temporary restraining order was granted by Judge Conboy, acting as the Part I Judge. However, Gund's prior motion for a recall of the Skippy dog was denied by Judge Conboy on that same date.

**2.** For purposes of this Opinion, all six sizes will be referred to as "Muttsy."

Although Skippy is also a floppy, plush toy dog, it has a more scruffy, mongrel look than Muttsy. Its fur is uneven and long, resulting in a much rougher appearance. Skippy is also more firmly stuffed than Muttsy, giving it a chubby appearance, and allowing Skippy to better hold its form when removed from the floor. When dropped on the floor, Skippy's head and face remain relatively upright, erect and tilted to one side, with the chin, not the nose, resting on the ground. Its chubby back legs tend to go straight back rather than outwards so that the rear paw pads are visible from above. Unlike Muttsy, Skippy has a large, broad, flat muzzle, with virtually no forehead. Skippy's eyes, which are also partially covered by fur, are two colors, with no eyelids or lashes, and its nose is made of shiny plastic. The ears are approximately the same size as Muttsy's, but have rounded edges and stick out more from the dog's head, especially on the smaller sizes. Finally, Skippy's tail is long, but starts higher on the rump than that of Muttsy.

According to testimony at the hearing, Gund first became aware that Applause was marketing the allegedly infringing Skippy dog on November 14, 1992. The instant action, alleging copyright infringement by Applause, and seeking a preliminary and permanent injunction, as well as a recall of Applause's infringing product, followed.

## DISCUSSION

■ In this Circuit, a party seeking a preliminary injunction must demonstrate (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the case or (2) sufficiently serious questions going to the merits as to make them a fair ground for litigation and a balance of hardships tipping decidedly towards that party. *Jackson Dairy, Inc. v. H.P. Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). *See also Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985). With respect to irreparable harm, it is well settled that in copyright infringement cases such harm is normally presumed upon a *prima facie* showing of infringement. *Gund v. Russ*

*Berrie & Co., Inc.*, 701 F.Supp. 1013, 1018 (S.D.N.Y.1988) (gathering cases).

■ To make a *prima facie* case of copyright infringement, the plaintiff must show (1) ownership of a valid copyright and (2) copying by the defendant. *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 499 (2d Cir.1982); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir.1977). In the instant case, the validity of the copyright in Muttsy was essentially uncontroverted during the hearing. Gund demonstrated that it complied with all the requirements of the Copyright Act, Title 17, U.S.C. § 101 *et seq.*, and that the Register of Copyrights issued to Gund a Certificate of Registration covering the Muttsy design. This Certificate is *prima facie* evidence of the copyrightability of the work and the validity of such copyright, shifting to Applause the burden of proving the contrary. 17 U.S.C. § 410(c); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d at 192; *Gund, Inc. v. Fortunoff, Inc.*, 1986 WL 14912, at *2 (S.D.N.Y.1986). Applause introduced no evidence, either at the hearing or in its papers, to rebut this *prima facie* evidence. This leaves the issue of whether Applause copied Gund's Muttsy design.

■ Because direct evidence of copying is rarely, if ever, available, a plaintiff may prove it circumstantially by showing (1) access to the copyrighted work and (2) "substantial similarity" to that work. *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d at 499; *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d at 1092. "Access is only an opportunity to copy." *Gund, Inc. v. Fortunoff, Inc.*, 1986 WL 14912, at *2 (citing *Fisher–Price Toys, Div. of Quaker Oats Co. v. My–Toy Co., Inc.*, 385 F.Supp. 218, 220 (S.D.N.Y.1974)). Given Applause's concession that Skippy's designer was provided with a sample of the Muttsy dog, *see* Declaration of Eun Sook Choi, sworn to on December 1, 1992, as well as Gund's evidence that (1) Muttsy is, and has been, one of Gund's top sellers since its introduction in 1986, (2) Muttsy has appeared in the Gund catalog from

1986 to the present, with approximately 40,000 catalogs distributed each year, (3) Muttsy has been featured in numerous advertisements in the mass media, as well as on national television, and that (4) Muttsy images are used on posters sold by retail stores, the Court finds that Gund has established access to the copyrighted work.

■ Thus, the Court moves on to the remaining element of whether Muttsy and Skippy are "substantially similar." If they are not, that ends the Court's inquiry. If they are, the defendant can still rebut the inference of copying by showing that its product was independently created despite its similarity to plaintiff's work. *Gund, Inc. v. Russ Berrie and Co., Inc.*, 701 F.Supp. 1013, 1018 (S.D.N.Y.1988) (citing *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d at 501).

Whether one work is substantially similar to another is determined by the "ordinary observer" test. Judge Learned Hand stated that there is substantial similarity where "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960). The Second Circuit has formulated this test as "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir.1966). The Court of Appeals has also explained that a work may be a "copy" even if every detail is not the same, as "[t]he key to the 'ordinary observer' test is … the similarities rather than the differences," because "[o]nly a slavish copy would have no differences." *Gund, Inc. v. Russ Berrie and Co.*, 701 F.Supp. at 1018 (quoting *Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d at 1093 & n. 4).

■ Significantly, however, copyright protection extends only to a work's particular expression of an idea and not to the idea itself, and "the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying." *Gund, Inc. v. Russ Berrie and Co.*, 701 F.Supp. at 1018-19 (quoting *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir.1980)). Thus, anyone can make a stuffed floppy dog, and all floppy dogs may share certain characteristics inherent in the idea of a floppy dog, such as the fact that they flop on their stomach, have no set shape, and are extremely huggable. *See Gund, Inc. v. Russ Berrie and Co., Inc.*, 701 F.Supp. at 1019. The issue then becomes whether the essential "expression" of Skippy—which flows not from the commonality of characteristics of floppy dogs, but from the way in which the characteristics have been designed and projected to produce a whole "look"—is such that it must be seen as copied from Muttsy. *Id.*

■ Based on the foregoing standards, the Court finds that Skippy and Muttsy are not substantially similar, and that any similarity between the two dogs would appear to the ordinary observer to result solely from the fact that both are more or less nonnaturalistic, reclining, huggable, floppy dogs. *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d at 500 (citing *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d at 1093). While the two floppy dogs are similar in shape, lie in a similar reclining position, and have certain features in common, such as plastic eyes partially covered by fur, long tails and ears, and plastic noses, their "total concept and feel" are substantially different. *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d at 500 (citing *Warner Brothers v. American Broadcasting Companies*, 654 F.2d 204, 211 (2d Cir.1981)).

First, and most significantly, an ordinary observer would be immediately struck by the different overall look of the two dogs. Muttsy's fur is made of a fine fiber, giving the dog a very smooth texture and finish. By contrast, Skippy has a mongrel-like appearance, with uneven and longer fur, resulting in a scruffy, rough look. More specifically, whereas Muttsy's plush material gives it an extremely smooth finish, Skippy looks as if he was sprayed with water by a passing car and left outside to dry.

Second, as a result of being more softly stuffed, Muttsy is a skinny dog with a greater degree of floppiness. If an adult or child purchaser attempted to pick Muttsy up by the tail area it would flop downward, unable to be held in a horizontal position. On the other hand, Skippy is more firmly stuffed, giving it a chubby appearance. And although Skippy retains its floppy charm, it is a more rigid dog, able to maintain its form when held by the tail area.[3]

Third, whereas Skippy's head and face are relatively upright, erect and tilted to one side, with the chin resting on the ground, Muttsy's face and head droop downward so that the nose rests on the floor. Additionally, the faces themselves are very different. Skippy's muzzle is very large, broad and flat, resulting in virtually no forehead for the dog. Muttsy, on the other hand, has an oval face, with a more defined and rounder muzzle, creating the impression of a distinct forehead. Moreover, although both dogs have plastic noses, Skippy's shiny nose has a different look than Muttsy's more pronounced, dull nose.

Fourth, despite being approximately the same length and size, the ears add to the overall different look and feel of the two dogs. Muttsy's ears have straight bottom edges and hang straight down from the dog's head. By contrast, Skippy's ears have rounded edges and stick out much more from the dog's head, especially on the smaller sizes.

Finally, although the toys, when dropped on the floor, often flop in different positions, Muttsy's rear legs have a tendency to stick out from both sides, whereas Skippy's chubbier back legs generally go straight back, making the rear paw pads visible from above.

These numerous differences necessitate a finding that Muttsy and Skippy are not substantially similar. Thus, Gund cannot establish a likelihood of success on the merits, and its motion for a preliminary injunction and recall is denied.

## CONCLUSION

For the reasons set forth above, Gund's motions for a preliminary injunction and recall are denied.

SO ORDERED.

---

**3.** At the hearing, Gund attempted to establish that in general Muttsy was not more softly stuffed than the Skippy dog. Rather, according to Gund, certain Muttsy dogs might be more softly stuffed than certain Skippy dogs because they are all handmade and thus vary from one to the other. *See* Hearing Transcript at 70–73. In addition, Gund tried to show that even if the stuffing was slightly different, the two dogs had the same aesthetic look. *Id.* The Court disagrees and finds that the Skippy dog is universally more firmly stuffed than Muttsy, and that such differences in stuffing affects the floppiness of the dog, and thus, the aesthetic look of the toy.