INNOVATIVE NETWORKS,
INC., Plaintiff,

v.

SATELLITE AIRLINES TICKETING
CENTERS, INC., Al Young, William
Young and Bernard Barton, Jr., Defendants.

No. 92 Civ. 2408 (SWK).

United States District Court,
S.D. New York.

Jan. 4, 1995.

New York City, for defendants Satellite Airlines Ticketing Centers, Inc., Al Young and William Young.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this action for copyright and trade dress infringement, tortious interference with contract and unfair competition, defendants Satellite Airlines Ticketing Centers, Inc.,[1] Al Young and William Young (collectively, the "Satellite Defendants") move, pursuant to Federal Rules of Civil Procedure 12(c) and 56, for (1) judgment on the pleadings dismissing Counts III through VI of the Complaint;[2] and (2) summary judgment dismissing Count II of the Complaint.[3] Plaintiff Innovative Networks, Inc. ("INI") opposes the Satellite Defendants' motion and cross-moves for partial summary judgment on liability as to Counts I, II, III and V of the Complaint. For the reasons set forth below, the parties' motions are granted in part and. denied in part.

## BACKGROUND[4]

### I. Barton's Employment With INI

From 1989 until 1991, INI was engaged in the business of designing, constructing and leasing airline business centers (the "INI

W. James MacNaughton, Woodbridge, N.J., for plaintiff.

Meyers Tersigni Lurie Feldman & Gray by Anthony L. Tersigni, Richard N. Gray,

1. The defendants claim that there is no entity by the name of "Satellite Ticketing Centers, Inc." Rather, defendants Al Young and William Young do business through various corporations and entities, many of which use the name "Satellite," including Satellite Airline Center of Orlando, Inc. Hereinafter, the Court shall refer to these various entities collectively as the "Satellite Companies."

2. The Court notes that Count IV alleges a claim for breach of contract against defendant Bernard Barton, Jr. ("Barton") only. This Count, as well as the other claims against Barton, were discharged in the United States Bankruptcy Court for the Southern District of New York.

3. The Satellite Defendants also move for judgment on the pleadings dismissing Count I of the Complaint except to the extent that it alleges unauthorized copying of the blueprints, designs and drawings attached to the Complaint as Exhibits "A" and "B." INI admits, however, that its copyright infringement claim is limited to the unlawful copying of the drawings themselves, as opposed to the site erected in accordance with the drawings. Accordingly, to the extent that the

Complaint alleges a cause of action for copyright infringement based on the construction of a facility, the Satellite Defendants' motion is granted.

4. Unless otherwise indicated, the following statement of undisputed facts is taken from the pleadings, the Affidavit of Anthony L. Tersigni, sworn to on February 14, 1994 (the "Tersigni Aff."), the parties' Rule 3(g) statements and accompanying exhibits, the Affidavit of Albert Young, sworn to on April 28, 1994 (the "Young Aff.") and the Affidavit of David Kleiman, sworn to on June 27, 1994 (the "Kleiman Aff."). The Court notes that plaintiff's 78–page Statement of Material Facts Not in Dispute does not comply with the requirements of Rule 3(g) that "there shall be annexed to the notice of motion a separate, *short and concise* statement of the material facts as to which the moving party contends there is no genuine issue to be tried." *See* Rule 3(g) of the Civil Rules for the United States District Courts for the Southern and Eastern Districts of New York (emphasis added). While concluding that sanctions are not warranted in this instance, the Court cautions plaintiff to abbreviate its Rule 3(g) statements in future motions.

Centers").[5] In February 1991, INI opened an INI Center in Manhattan (the "INI New York Center") and, in August 1991, INI, through a wholly-owned subsidiary, opened an INI Center in San Francisco, California (the "INI San Francisco Center"). Leonard, David and Steven Kleiman were directors and shareholders of INI during the relevant time period.

INI's largest competitor consisted of a group of companies and proprietorships known as the Satellite Companies, owned and operated by defendant Al Young. Defendant William Young, Al Young's son, works for the Satellite Companies. The Satellite Companies currently operate sixteen airline business centers in six states.

From August 1989 until July 1991, defendant Barton was an officer, director and shareholder of INI. Barton was responsible for procuring occupants for the INI Centers, negotiating leases with landlords and designing the INI Centers. On August 14, 1989, INI entered into an employment contract (the "Employment Contract") with Barton. Paragraph four of the Employment Contract provided, in relevant part, that Barton

> acknowledges and agrees that all of the business leads developed during the course of employment ... shall be the property of the Employer and all of the foregoing is designated and agreed to be "Privileged Information." In the event that employment is terminated for any reason, or should this Employment Agreement not be renewed upon the expiration of its stated term, [Barton] agrees that he shall not directly or indirectly utilize any of the Privileged Information and will not directly or indirectly engage in any similar or competing business in the continental United States for a period of 12 months *from the date of termination of employment.*

*See* the Employment Contract, annexed to the Tersigni Aff. as Exh. "4," at ¶ 4. That same day, INI also entered into a shareholder's agreement with Barton (the "Sharehold-

er's Agreement"). Paragraph 3.7 of the Shareholder's Agreement provided that:

> In the event that the Employment Agreement[ ] ... is ... not extended, then all of Barton's ... shares shall be deemed offered to the Corporation ... which offer shall be deemed immediately accepted by the Corporation as of the date that the Corporation delivers written notice of its intention not to extend the Employment Agreement[ ] or Barton ... delivers written notice of his refusal to accept an extension offer. In such event, the terminated employee shall have the option to defer the purchase of his shares by notice given to the Corporation and the other Shareholders within 10 days from the termination date of the Employment Contract and the following shall occur: ... (e) The term of the restrictive covenant contained in Paragraph 4 of the Employment Agreement shall be extended until one year after the date of purchase of the shares.

*See* the Shareholder's Agreement, annexed to the Exhibits to Plaintiff's Statement of Material Facts Not in Dispute (the "Exhibits") as Exh. "2," at ¶ 3.7.

The Employment Contract expired, by its terms, on January 31, 1990. Notwithstanding the expiration of the Employment Contract, however, Barton continued to work at INI until July 24, 1991, when he left the company.

In 1990, the Youngs, the Kleimans and Barton met to discuss a possible joint venture agreement between INI and the Satellite Companies. According to Al Young:

> During the course of this meeting, and at one or more follow up meetings with the Kleimans and/or Barton, plaintiff's representatives, in the context of a potential business combination, discussed their plans for new locations and generally their concepts of how the business should be operated.

---

5. An airline business center is a facility in which various airlines and other travel-related companies rent counter and office space for the purpose of selling their tickets and other services to the public. Each company places its own representatives at the airline business center and uses its own logo to identify the company.

*See* the Young Aff. at ¶ 9. Despite this meeting, the joint venture never was consummated.

In the beginning of 1991, INI developed plans for an INI Center in Orlando, Florida (the "INI Orlando Center"). As part of this development, INI negotiated with JMB Properties Company ("JMB"), the managing agent for the owner of the building, on all of the material terms of the lease for the INI Orlando Center. INI also developed a set of plans for the construction of the INI Orlando Center, including a floor plan, *see* blueprint for the construction of the INI Orlando Center, annexed to the Complaint as Exh. "A" (the "INI Orlando Floor Plan"),[6] and designs for counter facilities, *see* blueprints, designs and drawings for the construction of INI's 32mm modular work stations, annexed to the Complaint as Exh. "B" (the "INI Work Station Designs"). In addition, INI solicited several airlines, including United Airlines, US Air and Continental Airlines, to occupy the INI Orlando Center and subsequently received a verbal commitment of occupancy from United Airlines.

In July 1991, Barton left employment with INI.[7] At the time of his departure, INI contends that Barton took with him copies of numerous documents belonging to INI, including: (1) the INI Orlando Floor Plan; (2) the INI Work Station Designs; (3) the proposed lease between INI and JMB for the INI Orlando Center (the "Draft Lease Agreement"); (4) INI's standard license agreement (the "Standard License Agreement"); (5) INI contract proposals with United Airlines, US Air, Continental Airlines and other companies (the "Contract Proposals"); and (6) a rolodex with the names, addresses, and telephone numbers of INI's contacts (the "Rolodex").[8] After Barton's departure, INI continued to own and operate its airline business centers in New York and San Francisco until early 1992.

## II. Barton's Employment With Satellite

On August 1, 1991, Barton entered into a consulting agreement (the "Consulting Agreement") with Port Aviation Centers, Inc. ("Port Aviation"), a company owned by the Satellite Companies. The Consulting Agreement provided that Barton would be paid $15,000 for each location that Port Aviation successfully developed. *See* Consulting Agreement, annexed to the Exhibits as Exh. "29," at ¶ 4. Barton represented that his execution of the Consulting Agreement and his performance thereunder would not constitute a violation or breach of any other agreement to which he was a party. *Id.* at ¶ 7. Barton also agreed to indemnify Port Aviation against all claims resulting from a breach of his representation.

After Barton commenced employment with Port Aviation, Port Aviation developed plans to implement an airline business center at the same site in Orlando that INI was planning to use for the INI Orlando Center (the "Satellite Orlando Center"). According to INI, Barton negotiated a lease with JMB for the development of the Satellite Orlando Center. INI contends that Barton also placed United Airlines and US Air in the Satellite Orlando Center, using the Standard License Agreement to draft final lease agreements between the Satellite Companies and the airlines. In addition, the Satellite Companies placed a "Satellite" sticker over the INI name on the INI Orlando Floor Plan and distributed copies of the Plan to numerous airlines.[9] Without revealing his change

---

6. William Martin ("Martin") worked with David Kleiman in drafting the INI Orlando Floor Plan. Martin worked for the Kleimans, INI, PLP Reconstruction Corp. ("PLP") and other affiliates of INI from October 1990 through 1992. PLP, which paid Martin as an independent contractor, disclaims any copyright interest in the INI Orlando Floor Plan.

7. The circumstances surrounding Barton's departure are disputed. Barton claims that he left INI to pursue a new business opportunity with the Satellite Companies. INI claims that Barton was fired.

8. The Satellite Defendants contend that virtually all of these documents and the information contained in them were readily available and obtained from other sources. They contend further that nothing contained in these documents was either secret or confidential.

9. INI contends that the Satellite Companies continued to distribute copies of this floor plan more than one year after this action commenced.

of employer, Barton also obtained from INI's architect a complete set of blueprints used to construct the INI New York Center (the "INI New York Blueprints") for use in developing the Satellite Orlando Center. The Satellite Orlando Center was opened in November 1991.

The next month, INI learned that the Satellite Orlando Center had been completed utilizing Barton's services and expertise.[10] As a result, INI sent a letter to the Youngs demanding that the Youngs cease using Barton's services in violation of his contract with INI. The Satellite Defendants responded that INI's allegations were "without foundation." Subsequently, INI obtained a copyright registration for the INI Orlando Floor Plan and the INI Work Station Designs.

### III. The Complaint

On March 30, 1992, INI commenced this action for copyright and trade dress infringement (Counts I and II), tortious interference with contract (Count III), breach of contract (Count IV), unfair competition and misappropriation (Count V) and conspiracy and punitive damages (Count VI). Subsequently, on May 4, 1992, the Satellite Defendants answered the Complaint and asserted a cross-claim for indemnity and/or contribution against defendant Barton.

Barton has neither appeared in this action nor answered the Complaint. In March 1993, Barton filed a voluntary Chapter Seven bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York. The Satellite Defendants commenced an adversary proceeding in the Bankruptcy Court to determine the dischargeability of their cross-claims against Barton in this action. The Satellite Defendants also moved in the Bankruptcy Court for an order vacating the automatic stay to permit them to proceed against Barton on their cross-claims. That motion was granted and the automatic stay was vacated. INI did not commence an adversary proceeding in the Bankruptcy Court, however, and its claims against Barton were discharged.

The Satellite Defendants now move, pursuant to Federal Rules of Civil Procedure 12(c) and 56, for (1) judgment on the pleadings dismissing Counts III through VI of the Complaint; and (2) summary judgment dismissing Count II of the Complaint. INI cross-moves for partial summary judgment on liability as to Counts I, II, III and V of the Complaint. The Court will consider each of the parties' motions in turn.

### DISCUSSION

### I. Standard for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. New York*, 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir.1988); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,*

---

10. According to INI, the Satellite Orlando Center is virtually identical to the designs for the development of the INI Orlando Center.

480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). But the court is to inquire whether "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for the party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *Knight v. United States Fire Ins. Co.*, 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.*, but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion. *See, e.g., Knight v. United States Fire Ins. Co.*, 804 F.2d at 11–12.

Once the nonmoving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy his or her ultimate burden under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. at 330, n. 2, 106 S.Ct. at 2556, n. 2 (Brennan, J., dissenting). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

## II. Copyright Infringement

Count I of the Complaint alleges that the Satellite Defendants infringed INI's copyright in the "Plans," which are defined in the Complaint as the INI Orlando Floor Plan and the INI Workstation Designs. *See* Complaint at ¶¶ 10, 45. INI moves for summary judgment on liability against the Satellite Defendants pursuant to this Count. In response, the Satellite Defendants argue that material issues of fact exist as to (1) the validity of INI's copyright; and (2) whether INI abandoned its copyright when it distributed copies of its work to prospective tenants of the INI Orlando Center. For the reasons that follow, plaintiff's summary judgment motion is granted in part and denied in part.

### A. The Validity of INI's Copyright
#### 1. The INI Orlando Floor Plan

■ It is well-settled that, to establish a claim for copyright infringement, a plaintiff " 'must show ownership of a valid copyright and copying by the defendant.' " *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 499 (2d Cir.1982) (quoting *Warner Bros., Inc. v. American Broadcasting Cos.*, 654 F.2d 204, 207 (2d Cir.1981)); *see also Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139 (2d Cir.1992) (same). A certificate of copyright registration is *prima facie* evidence of the validity of a copyright, shifting the burden to the defendants to prove the contrary. 17 U.S.C. § 410(c); *Gund, Inc. v. Applause, Inc.*, 809 F.Supp. 304, 307 (S.D.N.Y.1993).

INI has provided the Court with a copy of the certificate of copyright registration for the INI Orlando Floor Plan, which indicates that Martin drafted the INI Orlando Floor Plan on behalf of INI as a work for hire. *See* Certificate of Copyright Registration, annexed to the Exhibits as Exh. "25." This certificate is *prima facie* evidence of the validity of INI's copyright in the INI Orlando Floor Plan, thereby shifting the burden to the Satellite Defendants to prove the contrary. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985); *Gund, Inc. v. Applause, Inc.*, 809 F.Supp. at 307. The Satellite Defendants attempt to meet this burden with several lines of argument, each of which will be addressed below.

### a. Ownership of the Copyright

■ The Satellite Defendants first contend that an issue of fact exists as to what entity owns the copyright in the INI Orlando Floor Plan. Copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201. "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 737, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811 (1989) (citing 17 U.S.C. § 102). Where a work is made for hire within the meaning of the Copyright Act, however, "the employer or other person for whom the work was prepared is considered the author ..., and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b). The Copyright Act defines a work made for hire as:

> (1) a work prepared by an employee within the scope of his or her employment; or
>
> (2) a work specially ordered or commissioned for use ... if the parties shall expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101.

In the case at hand, the certificate of copyright registration states that the INI Orlando Floor Plan was created by Martin as a work for hire. In order for the INI Orlando Floor Plan to be considered a work for hire, however, Martin must have prepared the plan within the scope of his employment pursuant to Section 101(1). *See Merchant v. Lymon*, 828 F.Supp. 1048, 1058 (S.D.N.Y. 1993) ("Generally, courts have applied the work for hire doctrine only to works made by employees in the regular course of their employment.").[11]

■ The term "employee" is defined in accordance with the general common law of agency. *Community For Creative Non–Violence v. Reid*, 490 U.S. at 740–41, 109 S.Ct. at 2172–73. Paramount to this definition is whether the hiring party has the right to control the manner and means by which the product is accomplished. *See* M. Nimmer & D. Nimmer, Copyright § 5.03[B] (1994). Factors to consider in making this determination include the (1) skill required; (2) source of the instrumentalities and tools; (3) location of the work; (4) duration of the relationship between the parties; (5) extent of the hired party's discretion over when and how long to work; (6) method of payment; (7) hired party's role in hiring and paying assistants; (8) tax treatment of the hired party; and (9) provision of employee benefits. *Community For Creative Non–Violence v. Reid*, 490 U.S. at 751–52, 109 S.Ct. at 2178–79. The Court should also consider whether the (1) work is part of the regular business of the hiring party; (2) hiring party is in business; and (3) hiring party has the right to assign additional projects to the hired party. *Id.* No single factor is determinative, *id.* at 752, 109 S.Ct. at 2179, and "[t]he factors should not be tallied but should be weighed according to their significance in the case." *Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir.1992).

Upon analyzing the undisputed facts within the context of the enumerated factors set forth in *Community For Creative Non–Violence v. Reid*, 490 U.S. at 751–52, 109 S.Ct. at 2178–79, the Court concludes that Martin was an "employee" within the meaning of Section 101(1) of the Copyright Act. First, Martin is not a licensed architect or engineer and does not have a formal trade or profession. Accordingly, his work did not require skills beyond the capacity of an ordinary layman. Second, INI owned all of the materials used to prepare the INI Orlando Floor Plan, including the paper, pencils, drawing tablets, desk space and photocopy materials. Third, Martin worked regular business hours at INI's offices for two years during which time he drafted the INI Orlando Floor Plan. During the course of his employment, Martin "was told what to do and when to do it." *See* Deposition of David Kleiman, taken on May 18, 1992 (the "Kleiman Dep."), annexed to the Young Aff. as Exh. "1," at 318. Martin

---

11. INI does not claim, nor does the Court find, that the INI Orlando Floor Plan is a specially ordered or commissioned work within the meaning of Section 101(2) of the Act.

did not hire or pay assistants. Fourth, the INI Orlando Floor Plan was prepared in the ordinary course of INI's business. Finally, David Kleiman made all of the creative decisions necessary to prepare the INI Orlando Floor Plan. Martin, working under David Kleiman's direction, simply drew the lines that comprised the layout of the floor plan without adding any of his own ideas. Taken together, these factors indicate that Martin was an employee who prepared the INI Orlando Floor Plan in the course of his employment.

The Satellite Defendants argue that Martin was an independent contractor by virtue of the fact that he received compensation from PLP, an affiliated entity of INI, rather than from INI directly. In addition, PLP reported to federal and state taxing authorities that Martin was not a salaried employee but rather was an independent contractor. While Martin may have held the title of "independent contractor," however, "an independent contractor is an 'employee' for the purposes of the Act if the contractor was not truly independent, but was controlled and supervised in the creation of the particular work by the employing party." *Johnstone v. Fox*, 85 C 3179, 1987 WL 45233, at *4, 1987 U.S. Dist. LEXIS 14661, at *10 (N.D.Ill. June 12, 1987). INI has presented undisputed evidence that Martin prepared the INI Orlando Floor Plan at the direction of and under the supervision of David Kleiman. In fact, Martin himself has stated that he considered the INI Orlando Floor Plan to be a work for hire. *See* Letter from William Martin to David Kleiman of 10/7/93, annexed to the Exhibits as Exh. "27." Accordingly, the Court finds that the INI Orlando Floor Plan is a work for hire within the meaning of Section 101(1).

### b. Originality of the Work

■ The Satellite Defendants next argue that the INI Orlando Floor Plan is not sufficiently original to qualify for copyright protection. In order to qualify for copyright protection, a work must possess "at least some minimal degree of creativity." *Feist Publications v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 1287, 113 L.Ed.2d 358 (1991). "[T]he requisite level of creativi-

ty is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark 'no matter how crude, humble or obvious' it might be." *Id.* (quoting M. Nimmer & D. Nimmer, Copyright § 1.08[C][1] (1990)).

It is well-established that architectural plans are eligible for copyright protection. *See Demetriades v. Kaufmann*, 680 F.Supp. 658, 663 (S.D.N.Y.1988); M. Nimmer & D. Nimmer, Copyright § 2.08[D][2] (1994). Relying on *East/West Venture v. Wurmfeld Assocs., P.C.*, 722 F.Supp. 1064, 1068 (S.D.N.Y. 1989) ("*East/West Venture*"), however, the Satellite Defendants argue that the INI Orlando Floor Plan is not sufficiently unique to qualify for copyright protection. The Court finds this case inapposite to the present action.

In *East/West Venture*, the defendant created architectural plans for the development of a real estate parcel in Fort Lee, New Jersey. Plaintiff purchased the property and filed a set of architectural plans with the Fort Lee Board of Adjustment. Thereafter, the defendant commenced suit claiming that plaintiff's plans infringed its own copyrighted materials. Plaintiff then commenced an action for declaratory relief claiming, *inter alia*, that it did not infringe on defendant's interests under the Copyright Act. *Id.* at 1066. In its affidavits, the plaintiff stated that copying certain basic features of the defendant's plans was dictated by (1) the configuration of the property; (2) a massive pre-existing but unused garage structure on the property that had to be incorporated into the overall development plan; and (3) zoning restraints. Analyzing whether the copyright laws applied to such a situation, the Court concluded that "to demonstrate infringement something unique in the plans not demanded by the uniqueness of the site must be copied." *Id.* at 1068.

In the present case, however, the Court finds nothing inherent in the nature of the property that dictates that the space be used as an airline business center. Moreover, even if an airline business center were the only feasible use for the property, the configuration of the property does not mandate the use of seven counters as set forth in the INI

Orlando Floor Plan. Finally, the Court finds that plaintiff's configuration of the seven counters in the INI Orlando Floor Plan is not demanded by the uniqueness of the site. In fact, plaintiff has provided the Court with two alternative layouts for seven counters in the space provided by the site. *See* Alternative Layouts for the INI Orlando Center, annexed to the Kleiman Aff. as Exhs. "A" and "B." Accordingly, the Court finds that the INI Orlando Floor Plan is sufficiently original to qualify for copyright protection. *See Kunycia v. Melville Realty Co.*, 755 F.Supp. 566, 571 (S.D.N.Y.1990) (finding that a store design did not impose such uniformity of format that the format could not be protected under the Copyright Act).

#### c. Abandonment

■ The Satellite Defendants next argue that summary judgment should be denied because material issues of fact exist as to whether INI abandoned or forfeited its copyright in the INI Orlando Floor Plan. Specifically, the Satellite Defendants contend that INI abandoned its copyright when it distributed copies of the floor plan to various individuals without a copyright notice. The Court finds that the Satellite Defendants' argument relies on outdated law set forth in the Copyright Act of 1909 (the "1909 Act").

The 1909 Act provided that a work had to bear a valid copyright notice upon publication in order to secure copyright protection. *See* M. Nimmer & D. Nimmer, Copyright § 7.02[C][1] (1994). In 1976, the Copyright Act was amended to allow a copyright owner to cure its omission of the copyright notice by taking subsequent reasonable efforts to affix notice and registration within five years. *Id.* at § 7.02[C][2]; *see also* the Copyright Act of 1976 (the "1976 Act"). The 1976 Act was amended by the Berne Convention Implementation Act of 1988, Pub.L. No. 100–568, 102 Stat. 2853 (1988) ("BCIA"), which eliminated the notice requirement completely. Thus, while the current statute states that "a notice of copyright ... *may* be placed on publicly distributed copies," 17 U.S.C. § 401(a) (emphasis added), affixing notice is no longer mandatory for works first published after March 1, 1989. *See Direct Mktg. of Va., Inc. v. E. Mishan & Sons, Inc.*, 753 F.Supp. 100, 104 n. 8 (S.D.N.Y.1990).

As the INI Orlando Floor Plan was first published in 1991, the 1976 Act as amended by the BCIA applies. A copyright notice therefore was not a necessary precondition to copyright protection and INI neither forfeited nor abandoned its copyright in the floor plan by distributing copies without a copyright notice affixed to it. Accordingly, as the Satellite Defendants have not rebutted plaintiff's *prima facie* evidence of the validity of its copyright in the INI Orlando Floor Plan, the Court finds that plaintiff has a valid copyright in the work.

#### 2. The INI Workstation Designs

■ David Kleiman prepared the INI Workstation Designs for use in the INI New York and San Francisco Centers. Thereafter, on or about February 14, 1992, INI received a certificate of copyright registration for the INI Workstation Designs. *See* Certificate of Copyright Registration, annexed to the Exhibits as Exh. "28." This certificate is *prima facie* evidence that the copyright in the work is valid. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d at 192; *Gund, Inc. v. Applause, Inc.*, 809 F.Supp. at 307. The Satellite Defendants have submitted no evidence to rebut INI's *prima facie* evidence of the validity of its copyright in the INI Workstation Designs. Accordingly, the Court finds that INI has a valid copyright in the work.

### B. Copying by the Defendants

Having found that INI has valid copyrights in the INI Orlando Floor Plan and the INI Workstation Designs, the Court next must consider whether INI has demonstrated copying by the defendants. *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d at 499. "Where the defendant admits copying the protected work, plaintiff need not prove that defendant had access to the work and that there is substantial similarity between it and the accused work." *Kunycia v. Melville Realty Co.*, 755 F.Supp. at 575.

■ In the instant case, the Satellite Defendants do not dispute that they made copies of the INI Orlando Floor Plan, affixed the

Satellite sticker to it and distributed it to prospective tenants of the Satellite Orlando Center. *See* Letter from William Young to Roland Hawkins of 4/12/93, annexed to the Exhibits as Exh. "58;" *see also* INI Orlando Floor Plan with Satellite logo, annexed to the Exhibits as Exh. "45;" Satellite Proposals containing INI Orlando Floor Plan with Satellite Logo sent to various airlines and airline-related businesses, annexed to the Exhibits as Exhs. "46" through "57." Accordingly, the Court finds that the plaintiff has met its burden of proving that the Satellite Defendants copied the INI Orlando Floor Plan.

■ The Satellite Defendants claim, however, that they are "innocent infringers" as they did not know that the INI Orlando Floor Plan was a copyrighted work when they copied it. A finding of innocent infringement primarily is a factual determination. *D.C. Comics, Inc. v. Mini Gift Shop,* 912 F.2d 29, 35 (2d Cir.1990). Even an innocent infringer, however, is liable for copyright infringement. *Fitzgerald Publishing Co. v. Baylor Publishing Co.,* 807 F.2d 1110, 1113 (2d Cir.1986). Thus, a finding of innocent infringement "does not absolve the defendant of liability under the Copyright Act. Rather, it triggers an equitable remedy that affords the district court discretion to award damages commensurate with the defendant's culpability." *D.C. Comics, Inc. v. Mini Gift Shop,* 912 F.2d at 35; *see also Fitzgerald Publishing Co. v. Baylor Publishing Co.,* 807 F.2d at 1113 ("Innocence is only significant to a trial court when it fixes statutory damages, which is a remedy equitable in nature."). As the Satellite Defendants' claim of innocent infringement thus does not provide a defense against plaintiff's motion for summary judgment as to liability only, plaintiff's motion with respect to the INI Orlando Floor Plan is granted.

■ With respect to the INI Workstation Designs, however, INI has not provided any direct evidence of copying by the defendants. In the absence of direct evidence of copying, a plaintiff may prove copying by showing (1) access to the copyrighted work; and (2) substantial similarity between the infringing work and the copyrighted work. *Laureyssens v. Idea Group, Inc.,* 964 F.2d at 139.[12]

■ Plaintiff alleges that the Satellite Defendants had access to the INI Workstation Designs by virtue of the fact that Barton took copies of these Designs when he departed from INI in 1991. Assuming the Satellite Defendants had access to the copyrighted work, however, plaintiff has failed to submit any evidence that the Satellite Defendants created infringing designs that were substantially similar to the INI Workstation Designs. In fact, plaintiff alleges that the Satellite Defendants did not construct workstations in accordance with the INI Workstation Designs because they were unable to find a supplier to make them. *See* Statement of Material Facts Not In Dispute at ¶ 434.[13] Accordingly, as INI has not established copying of the INI Workstation Designs by the Satellite Defendants, its motion for summary judgment on its claim for copyright infringement of the INI Workstation Designs is denied.

### III. Trade Dress Infringement

Count II of the Complaint asserts a claim for trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ("Section 43(a)"). The Satellite Defendants move for summary judgment dismissing this Count on the grounds that (1) plaintiff is unable to identify the precise elements of its trade dress; (2) many of the elements of plaintiff's trade dress are functional; (3) plaintiff's trade dress does not have a consistent look and has not acquired a secondary meaning in the marketplace; and

12. Where the copyrighted work and the infringing work are "strikingly similar," the test for proof of access is less rigorous. *See Gaste v. Kaiserman,* 863 F.2d 1061, 1067 (2d Cir.1988)

13. Plaintiff does allege that the workstations used at the Satellite Orlando Center are similar to those used by INI in the INI New York Center. Assuming the workstations share a substantial similarity, however, the Court finds that INI's copyright in the INI Workstation Designs does not extend to the workstations themselves. *See Demetriades v. Kaufmann,* 680 F.Supp. at 665 (finding that construction of a building imitating that depicted in copyrighted architectural plans does not constitute infringement of those plans).

(4) there is no confusion in the marketplace. INI opposes the Satellite Defendants' motion and cross-moves for summary judgment on liability. According to INI, the Satellite Defendants violated Section 43(a) by falsely designating the INI Orlando Floor Plan as a Satellite product. The Court will address each of these motions below.

## A. The Satellite Defendants' Motion

Section 43(a) provides, in relevant part: Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, ... or any false designation of origin ... which (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). The statute has been interpreted to protect a product's trade dress, which is defined as " 'the total image of a product and may include features such as size, shape, color or color combinations, texture, or graphics.' " *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985) (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983)). "Trade dress traditionally refers to the packaging or labeling of a product, but may also include the appearance of the product itself." *Walt Disney Co. v. Goodtimes Home Video Corp.*, 830 F.Supp. 762, 766 (S.D.N.Y.1993) (citing *Stormy Clime, Ltd. v. ProGroup, Inc.*, 809 F.2d 971 (2d Cir.1987)).

### 1. Consistent Overall Look

■ The trade dress that INI seeks to protect is the overall appearance of the INI Centers. Specifically, plaintiff claims that the INI Centers in New York and San Francisco were designed and constructed to resemble the ticket counters in an airport. In this respect, INI's trade dress is analogous to the trade dress at issue in *Walt Disney Co. v. Goodtimes Home Video Corp.*, 830

F.Supp. at 766. In that case, plaintiff sought an injunction barring the defendant from using videocassette packaging that plaintiff alleged looked like its own videocassette packaging. After a bench trial, the Court found that:

> Disney's claim differs from most trade dress claims in that the alleged trade dress is not a specific package or the appearance of a single product, but rather the overall look of a number of different packages.... In light of this difference, Disney has a burden which most plaintiffs alleging trade dress infringement do not need to carry. Disney must establish the existence of a recognizable trade dress. That is, Disney must establish that its videocassette packages have a consistent overall look.

*Id.*

Similarly, in order to establish an identifiable trade dress in the present case, INI must demonstrate that its product has a consistent overall look. Plaintiff claims that the INI Centers were designed and constructed to resemble the ticket counters in an airport. Specifically, INI states that it created an airport appearance by using "high tech" materials, subdued color schemes, three levels of signage, recessed lighting, uniform counters, inserts and arrangements of shelves and drawers for equipment. In response, the Satellite Defendants argue that INI's own witnesses are unable to articulate a consistent overall look for INI's trade dress. Under the circumstances, the Court finds that a material issue of fact exists as to whether INI has a recognizable trade dress. Accordingly, summary judgment is precluded as a matter of law.

### 2. Elements of Trade Dress Infringement

■ Even if INI was able to establish a recognizable trade dress as a matter of law, the Court finds that material issues of fact exist as to each of the remaining elements of INI's trade dress claim. In order to prove infringement once it has demonstrated an identifiable trade dress, a plaintiff must show that its trade dress is nonfunctional and has acquired secondary meaning in the marketplace "by which it is identified with its producer or source." *LeSportsac, Inc. v. K*

Mart Corp., 754 F.2d at 75. If plaintiff "can establish a protected, unregistered trade dress based on nonfunctionality and secondary meaning, there must then be a showing that the allegedly infringing trade dress is likely to cause confusion in the market." *Demetriades v. Kaufmann,* 680 F.Supp. at 666; *see also Two Pesos, Inc. v. Taco Cabana, Inc.,* — U.S. —, —, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615 (1992) (stating that liability under Section 43(a) requires proof of likelihood of confusion). The Satellite Defendants contend that plaintiff has failed to prove either nonfunctionality, secondary meaning or likelihood of confusion.

### a. Functionality of Trade Dress

■ The Satellite Defendants first argue that all of the elements of INI's trade dress are functional. "A trade dress is functional if it is essential to the purpose of the package or if it affects the cost or quality of the package." *Walt Disney Co. v. Goodtimes Home Video Corp.,* 830 F.Supp. at 768; *see also Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 851 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982). " 'Functional symbols (those that are essential to a product's use as opposed to those which merely identify it) are not protected under § 43(a).' " *LeSportsac, Inc. v. K Mart Corp.,* 754 F.2d at 75 (quoting *Warner Bros., Inc. v. Gay Toys, Inc.,* 724 F.2d 327, 330 (2d Cir.1983)). The burden falls on the defendant to prove functionality as a defense to a claim of trade dress infringement. *Id.* at 76.

■ The Satellite Defendants contend that all of the elements of INI's trade dress are functional and are thereby precluded from protection. In response, INI argues that the appearance of the INI Centers is not essential to the use or purpose of the facility as a retail outlet for airline tickets. The Court concludes that this dispute gives rise to an issue of fact precluding summary judgment. *See Vuitton et Fils S.A. v. J. Young Enters., Inc.,* 644 F.2d 769, 775 (9th Cir.1981) ("The issue of functionality has been consistently treated as a question of fact.") (cited in *LeSportsac, Inc. v. K Mart Corp.,* 754 F.2d at 76).

### b. Secondary Meaning

■ The Satellite Defendants next contend that plaintiff's trade dress is precluded from protection because it is neither inherently distinctive nor has acquired secondary meaning in the marketplace. Marks are classified in the following categories of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.,* — U.S. at —, 112 S.Ct. at 2757; *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.,* — U.S. at —, 112 S.Ct. at 2757.

■ A mark that is not inherently distinctive is also eligible for protection if it develops secondary meaning by which it becomes distinctive of the producer's goods in commerce. *Id.* at —, 112 S.Ct. at 2757–58. Such a mark acquires secondary meaning in the minds of the public where the primary significance of a product feature or term is to identify the source of the product. *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. at 851 n. 11, 102 S.Ct. at 2187 n. 11.

■ Classification of a mark is a factual question. *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1039–40 (2d Cir.1992). The presence of secondary meaning is also a factual determination "proof of which 'entails vigorous evidentiary requirements.' " *Id.* at 1041 (quoting *Thompson Medical Co. v. Pfizer, Inc.,* 753 F.2d 208, 217 (2d Cir.1985)); *see also Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 169 (2d Cir.1991) ("The careful weighing of evidence necessary to determining secondary meaning renders it an unlikely candidate for summary judgment.")

■ INI contends that its trade dress is a suggestive mark because imagination, thought and perception are required to make the connection between the airport appearance and the non-airport type of goods and services that INI provides. *See Abercrombie & Fitch Co. v. Hunting World,* 537 F.2d at

11 (stating that a term is suggestive "if it requires imagination, thought and perception to reach a conclusion as to the nature of goods") (quoting *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968)). Alternatively, INI claims that its trade dress has acquired secondary meaning in the marketplace. The Satellite Defendants argue, however, the INI trade dress is generic, *i.e.*, it refers to the genus of which the particular product is a species. *Id.* at 9. They contend further that INI has failed to establish secondary meaning, as the public fails to identify the INI Centers as belonging to any single source. In the face of these disputed issues of fact, the Satellite Defendants' motion for summary judgment is denied.[14]

### c. Likelihood of Confusion

█ The Satellite Defendants also contend that INI is unable to establish that there is a likelihood of confusion as to the origin of the Satellite Orlando Center. To state a claim for trade dress infringement, INI must show a "likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 256 (2d Cir. 1987) (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979)).

█ In deciding the issue of likelihood of confusion, the Court is guided by the multi-factor test set forth by Judge Friendly in the seminal case, *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir.1961), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). The so-called *"Polaroid factors"* for determining whether likelihood of confusion exists consist of eight criteria, including the: (1) strength of the mark; (2) degree of similarity between the two marks; (3) proximity of the products; (4) likelihood that the

prior owner will bridge the gap; (5) degree of actual confusion; (6) defendant's good faith; (7) quality of the defendant's product; and (8) sophistication of the buyers. *Id.* at 495. Questions regarding the likelihood of confusion normally are factual in nature. *Universal City Studios, Inc. v. Nintendo Co.,* 746 F.2d 112, 116 (2d Cir.1984).

Upon consideration of the multi-factor *Polaroid* test within the context of the Satellite Defendants' summary judgment motion, the Court finds that several issues of fact preclude summary judgment as a matter of law. First, as set forth in part II(A)(2)(b), the distinctiveness of INI's trade dress is a question of fact. Second, the degree of similarity between INI's trade dress and the overall appearance of the Satellite Orlando Center is hotly disputed by the parties. Third, a question of fact exists as to the Satellite Defendants' good faith in selecting the appearance of the Satellite Orlando Center. Fourth, it is disputed whether the Satellite Orlando Center is of inferior quality to INI's product. In light of these disputed issues of fact, the Court is unable to determine likelihood of confusion as a matter of law.

In sum, the Court finds that material issues of fact exist concerning whether (1) INI has a recognizable trade dress in the INI Centers; (2) INI's trade dress is functional; (3) the trade dress is inherently distinctive or has acquired secondary meaning in the marketplace; and (4) there is a likelihood of confusion between INI's trade dress and the Satellite Orlando Center. Accordingly, the Satellite Defendants' motion for summary judgment dismissing Count II of the Complaint is denied.

### B. INI's Motion

█ INI moves for summary judgment on liability as to Count II of the Complaint, contending that the Satellite Defendants violated Section 43(a) by falsely designating the INI Orlando Floor Plan as a

---

**14.** INI argues that the fact that the Satellite Defendants intentionally copied the INI Orlando Center in constructing the Satellite Orlando Center is persuasive evidence of secondary meaning. *See Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1224 (2d Cir.

1987) (stating that intentional copying is persuasive evidence of consumer recognition and goodwill). Nonetheless, the Court finds that the issue of the Satellite Defendants' intent is a question of fact for trial.

Satellite product. False designation of origin, also known as reverse palming off, is actionable under Section 43(a). *Rosenfeld v. W.B. Saunders, Div. of Harcourt Brace Jovanovich, Inc.*, 728 F.Supp. 236, 241 (S.D.N.Y.), *aff'd*, 923 F.2d 845 (2d Cir.1990). The Satellite Defendants argue that INI's motion should be denied, however, because (1) INI did not plead a cause of action for reverse palming off in its Complaint; (2) INI lacks standing with respect this claim; (3) INI has neither alleged nor proved actual injury; (4) the INI Orlando Floor Plan does not constitute "goods" within the meaning of Section 43(a); (5) the authorship of the INI Orlando Floor Plan is a disputed issue of fact; and (6) INI has failed to either allege or prove confusion as required by Section 43(a). Because the Court finds that INI has not pleaded a cause of action for false designation of origin, the Court need not consider the Satellite Defendants' remaining contentions.

▮▮▮ Federal Rule of Civil Procedure 8 requires that a pleading set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Rule 8(e)(1) states further that "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed.R.Civ.P. 8(e)(1). While the requirements of Rule 8 are liberal, a complaint is insufficient if it is not detailed or informative enough " 'to enable [the] defendant to respond and to raise the defense of res judicata if appropriate.' " *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir.1986) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir.1980)).

INI's Complaint fails to meet even the liberal requirements of Rule 8. Specifically, the Complaint alleges that (1) INI invested a significant amount of time and money to create the INI Orlando Floor Plan, Complaint at ¶¶ 9(a), 10(a), 15; (2) Barton took the INI Orlando Floor Plan with him when he left employment at INI, *id.* at ¶ 26; (3) Satellite used the INI Orlando Floor Plan to construct the Satellite Orlando Center, *id.* at ¶¶ 32, 34; (4) the Satellite Defendants made copies of the INI Orlando Floor Plan during the development of the Satellite Orlando Center, *id.* at ¶ 35; (6) the Satellite Defendants are continuing to use the INI Orlando Floor Plan to obtain further business from the airlines, *id.* at ¶ 36; and (7) the actions of the Satellite Defendants constitute a violation of Section 43(a), *id.* at ¶ 47. Nevertheless, the Complaint fails to allege the crux of INI's false designation of origin claim, namely that the Satellite Defendants distributed the INI Orlando Floor Plan with the Satellite logo placed over INI's name. *See Rosenfeld v. W.B. Saunders, Div. of Harcourt Brace Jovanovich, Inc.*, 728 F.Supp. at 241 ("Express reverse palming off occurs when 'the wrongdoer removes the name or trademark on another party's product and sells that product under a name chosen by the wrongdoer.' ") (quoting *Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir.1981)). In light of this deficiency, the Court cannot consider INI's summary judgment motion on its reverse palming off theory of Section 43(a) liability.

## IV. State Law Claims

Counts III, V and VI of the Complaint allege state law claims for tortious interference with contract, unfair competition and misappropriation, and conspiracy and punitive damages, respectively. The Satellite Defendants move for summary judgment dismissing these claims on the grounds that (1) the Court lacks jurisdiction or should decline to exercise jurisdiction under 28 U.S.C. § 1367; and (2) the Complaint fails to state a claim upon which relief may be granted. INI opposes this motion and cross-moves for summary judgment on liability as to Counts III (interference with contract) and V (unfair competition and misappropriation).

### A. Jurisdiction

▮▮▮ The Satellite Defendants first contend that the Court lacks jurisdiction over INI's state law claims pursuant to 28 U.S.C. § 1367. Section 1367(a) provides, in relevant part:

> [T]he district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). This statute codifies common law practice according a federal court pendent jurisdiction [15] over a plaintiff's state law claims where the state and federal claims "derive from a common nucleus of operative fact" such that "the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *see also Miller v. Lovett,* 879 F.2d 1066, 1071 (2d Cir.1989) ("The exercise of pendent jurisdiction is particularly appropriate in actions where the state claims closely parallel issues of federal policy.").

■■■ "A federal court's exercise of pendent jurisdiction over plaintiff's state law claims, while not automatic, is a favored and normal course of action." *Promisel v. First Am. Artificial Flowers,* 943 F.2d 251, 254 (2d Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). The court generally will exercise such jurisdiction if "'considerations of judicial economy, convenience and fairness to litigants' weigh in favor of hearing the claims at the same time." *Id.* (quoting *United Mine Workers v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139). A court should decline to exercise supplemental jurisdiction, however, where it would "work an injustice between the parties, waste judicial resources, or generate needless decisions of state law." *Miller v. Lovett,* 879 F.2d at 1072. "A court may also decline jurisdiction where state-law issues substantially predominate, or where divergent legal theories of relief would likely confuse the jury." [16] *Id.*

In the present case, the Court finds that INI's state claims derive from the same nucleus of operative fact as its federal claims and that both the federal and state claims are part of the same case or controversy. In

support of all of its causes of action, INI alleges that Barton took with him certain documents when he left employment with INI, including the INI Orlando Floor Plan. Barton then entered into the Consulting Agreement with Port Aviation, using INI's documents to assist the Satellite Defendants in developing the Satellite Orlando Center. While the state law claims may require additional proof beyond that required by the federal claims, "this alone is insufficient to prevent the exercise of supplemental jurisdiction." *Brown v. Bronx Cross County Medical Group,* 834 F.Supp. 105, 109 (S.D.N.Y.1993). Thus, in view of the commonality between plaintiff's federal and state law claims, the Court has the authority to assert supplemental jurisdiction over plaintiff's state law claims. *See Demetriades v. Kaufmann,* 698 F.Supp. 521, 528–29 (S.D.N.Y.1988) (exercising supplemental jurisdiction where complaint stated federal claims for copyright and trade dress infringement and state claim for misappropriation).

Considerations of judicial economy, convenience and fairness also warrant a finding of jurisdiction in this case. As the federal and state claims arise out of the same set of operative facts, INI would endure unnecessary hardship if it were compelled to bring a parallel action in state court on the state law claims. In addition, the fact that the instant action has been pending for almost three years during which time the parties have engaged in substantial discovery militates in favor of retaining jurisdiction. In light of these factors, the Satellite Defendants' motion to dismiss plaintiff's state law claims for lack of jurisdiction is denied.

**B. Failure to State a Claim**

The Satellite Defendants also contend that Counts III, V and VI of the Complaint

---

**15.** The terms "pendent" jurisdiction and "supplemental" jurisdiction shall be used interchangeably.

**16.** Section 1367(c), which codifies the common law rule for determining when a court should decline to exercise supplemental jurisdiction, provides that:

The district courts may decline to exercise supplemental jurisdiction ... if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

should be dismissed for failure to state a claim upon which relief may be granted. INI cross-moves for summary judgment on liability with respect to Counts III and V of the Complaint. The Court shall consider each of the Counts in turn.

### 1. Interference with Contractual Relations

■ Count III of the Complaint states a claim for tortious interference with contract. In order to establish such a claim, a plaintiff must prove: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of a breach of contract by the third party; and (4) damages caused by the breach. *Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542, 560–61 (S.D.N.Y.1985) (citing *Strobl v. New York Mercantile Exch.,* 561 F.Supp. 379, 386 (S.D.N.Y.1983)). Because the Court finds that material issues of fact exist as to the elements of this claim, both parties' summary judgment motions are denied.

### a. Expiration of the Restrictive Covenant

■ The Satellite Defendants argue that INI cannot establish the existence of a valid restrictive covenant at the time Barton left employment at INI. According to the Satellite Defendants, as the Employment Contract terminated on January 31, 1990, the restrictive covenant therefore lapsed on January 31, 1991, six months prior to Barton's departure from INI. The Court finds, however, that a material issue of fact exists as to whether INI and Barton intended the restrictive covenant to remain in effect after the expiration of the original term of the Employment Contract.

It is a general rule that:

[W]hen, upon the expiration of a contract of employment for a definite term, the employee continues to render the same services as he rendered during the term of the contract without expressly entering into any new agreement, it will be presumed that he is serving under a new contract having the same terms and conditions as the original one and provisions and restrictions forming essential parts of the original contract, even though collateral to the employment itself, continue in force.

*Borne Chem. Co. v. Dictrow,* 85 A.D.2d 646, 445 N.Y.S.2d 406, 411 (2d Dep't 1981) (internal citations omitted). Plaintiff contends that, as Barton continued to work for INI after the Employment Contract had expired, the Contract implicitly renewed itself under the same terms and conditions that existed during the original term, including the restrictive covenant.

■ Where the original term of an employment contract is for more than one year, however, the Statute of Frauds precludes a renewal for the full period of the original term absent a written agreement. *See* N.Y.Gen.Oblig.Law § 5–701(a)(1) (McKinney 1989). Instead, the continuance of employment supports a presumption of renewal of the employment contract in one-year increments. *See Borne Chem. Co. v. Dictrow,* 445 N.Y.S.2d at 411; *Hubbell v. Hubbell Highway Signs, Inc.,* 72 A.D.2d 923, 422 N.Y.S.2d 199, 201 (4th Dep't 1979). Whether the restrictive covenant remains in effect in such a case "depends on the intent of the parties as evidenced largely by the language of the written agreement." *Thur v. IPCO Corp.,* 173 A.D.2d 344, 569 N.Y.S.2d 713, 725 (1st Dep't 1991).

In the present case, the Employment Contract clearly expired by its terms on January 30, 1990. INI argues, however, that the language of the Employment Contract supports the presumption that the restrictive covenant remained in force after the expiration of the original term. Specifically, INI points to the provision of the Employment Contract that triggered the restrictive covenant when Barton's "employment is terminated for any reason, or should this Employment Agreement not be renewed upon the expiration of its stated term." *See* Employment Contract, annexed to the Tersigni Aff. as Exh. "4," at ¶ 4. In addition, INI points to the reference to the "initial" term of the Employment Contract as evidence that the parties contemplated additional terms of employment. *Id.* at ¶ 2. The Court finds, however, that the language of the Employment

Contract does not readily indicate that the parties intended to extend the restrictive covenant provision by continuing to employ Barton after January 31, 1990.

INI argues further that the fact that the Shareholder Agreement extended the term of the restrictive covenant until one year after INI purchased Barton's stock is evidence that the parties intended to extend the restrictive covenant beyond the stated term of the Employment Contract. The language of the Shareholder's Agreement provides, however, that the Corporation would be deemed to have acquired Barton's stock "[i]n the event that the Employment Agreement[ ] ... is ... not extended." *See* the Shareholder's Agreement, annexed to the Exhibits as Exh. "2," at ¶ 3.7. It is unclear from the language of this clause whether the Shareholder's Agreement would, in fact, be triggered in the event that the parties implicitly extended the terms of the Employment Contract. Accordingly, the language of the Shareholder's Agreement does not resolve whether the parties intended to extend the terms of the restrictive covenant when Barton continued to work at INI after the expiration of the original term of the Employment Contract.

Finally, INI argues that Barton and David Kleiman orally agreed to extend the terms of the Employment Contract but that they "just never got around to redrafting the contract." *See* Deposition of Bernard Barton, taken on August 4, 1993, annexed to the Appendix to Statement of Material Facts Not in Dispute as Exh. "2," at 59. Barton also testified at his deposition, however, that the parties had not, in fact, executed a new contract. *Id.* at 60. Barton testified further that he believed that the Employment Contract ended on January 31, 1990. *Id.* In the face of this ambiguous testimony, an issue of fact exists as to whether the parties intended that the restrictive covenant provision be extended beyond the original term of the Employment Contract. *See Thur v. IPCO Corp.*, 569

N.Y.S.2d at 715 (stating that plaintiff's actions are "evidence of at least the existence of triable issues of fact that the parties intended the restrictive covenant to commence only upon plaintiff's final termination of employment").[17]

### b. Validity of the Restrictive Covenant

The Satellite Defendants next argue that the restrictive covenant is unenforceable as it is unreasonable in time and geographic scope. "Restrictive covenants relating to employment are disfavored at law, but such covenants will be enforced if reasonably limited in time and scope, to the extent necessary to protect the employer." *Contempo Communications, Inc. v. MJM Creative Servs., Inc.*, 182 A.D.2d 351, 582 N.Y.S.2d 667, 668 (1st Dep't 1992) (citing *Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 398 N.Y.S.2d 1004, 369 N.E.2d 4 (1977)). Additional factors the court looks to include whether the (1) burden on the employee is reasonable; (2) general public is harmed; and (3) restriction is necessary for the employer's protection. *Mallory Factor Inc. v. Schwartz*, 146 A.D.2d 465, 536 N.Y.S.2d 752, 753 (1st Dep't 1989).

The Court finds that the present covenant was reasonable as a matter of law. First, the covenant was of relatively short duration, precluding Barton from using any privileged information or engaging in a competing business for twelve months from the date his employment terminated. Second, while the geographic scope encompassing the continental United States was rather broad, such a restriction is reasonable in light of the national scope of INI's business. *See Business Intelligence Servs., Inc. v. Hudson*, 580 F.Supp. 1068, 1073 (S.D.N.Y.1984) (upholding a restrictive covenant despite unlimited geographic scope in view of the international nature of plaintiff's business).

Third, the scope of the restrictive covenant was fair, prohibiting Barton from engaging in a "similar or competing busi-

---

17. The Satellite Defendants argue that the restrictive covenant, even if extended beyond the original term of the Employment Contract, is invalid as Barton was fired without cause before the end of the extended term of employment. *See Borne Chemical Co. v. Dictrow*, 445 N.Y.S.2d at 412 (stating that an employer may not invoke a restrictive covenant after terminating an employee's employment without cause). The Court finds, however, that the reasons behind Barton's departure from INI remain a disputed issue of fact.

ness" but not precluding him from engaging in general real estate development or brokerage activities. Fourth, the enforcement of such a clause does not appear to be anticompetitive or otherwise harmful to the general public. *See Mallory Factor Inc. v. Schwartz,* 146 A.D.2d 465, 536 N.Y.S.2d at 754 (stating that "the enforcement of such a covenant cannot be viewed as anti-competitive or otherwise harmful to the general public"). Finally, in light of the importance of Barton's contacts and his assistance in developing the INI Centers, the Court finds that the restrictive covenant was necessary for INI's protection.[18]

### c. Intentional Procurement of the Breach

■ The Satellite Defendants also argue that Count III should be dismissed because the Complaint fails to allege that the defendants intentionally procured a breach of the Employment Contract.[19] To prove intent, the plaintiff must show "that 'there would not have been a breach but for the activities of defendants.'" *Sharma v. Skaarup Ship Management Corp.,* 916 F.2d 820, 828 (2d Cir.1990) (quoting *Special Event Entertainment v. Rockefeller Ctr., Inc.,* 458 F.Supp. 72, 78 (S.D.N.Y.1978)), *cert. denied,* 499 U.S. 907, 111 S.Ct. 1109, 113 L.Ed.2d 218 (1991).

The Court finds that a reasonable reading of the pleaded facts states a cause of action for intentional procurement of the breach. The Complaint alleges, for example, that, after INI informed the Satellite Defendants that the Employment Contract precluded Barton from competing with INI, the Satel-

lite Defendants responded that INI's allegations were "without foundation." *See* Complaint at ¶ 30–31. The Complaint alleges further that the Satellite Defendants completed the Satellite Orlando Center using INI's documents and the services of Barton. *Id.* at ¶¶ 32, 34, 36. Accepting these allegations as true for the purposes of this motion, the Court finds that the Complaint states a cause of action for tortious interference with contractual relations. Accordingly, the Satellite Defendants' motion to dismiss Count III is denied. As disputed issues of fact remain as to this Count, INI's motion for summary judgment also is denied.

### 2. Unfair Competition and Misappropriation

The Satellite Defendants next contend that the Court should dismiss Count V of the Complaint, which states a claim for unfair competition and misappropriation. According to the Satellite Defendants, this Count must be dismissed because (1) it is preempted by federal copyright law pursuant to 17 U.S.C. § 301(a); (2) the allegedly misappropriated documents contain no trade secrets or confidential information; and (3) INI does not possess any "property right" upon which to base a claim for unfair competition. INI opposes this motion and cross-moves for summary judgment, contending that the Satellite Defendants' use of INI's (1) Draft Lease Agreement; (2) Standard License Agreement; (3) Contract Proposals; (4) New York Blueprints; (5) Rolodex; and (6) Orlando Floor Plan constitutes unfair competition and misappropriation as a matter of law.

---

18. The Satellite Defendants argue that the Restrictive Covenant is unenforceable as Barton's position did not involve the use of trade secrets. However, if an employee's "services are truly 'special, unique or extraordinary' and not merely of 'high value to his employer', [sic] injunctive relief may be available though trade secrets are not involved." *Columbia Ribbon & Carbon Mfg. Co. v. A–1–A Corp.,* 42 N.Y.2d 496, 398 N.Y.S.2d 1004, 1006–07, 369 N.E.2d 4 (1977) (quoting *Purchasing Assoc., Inc. v. Weitz,* 13 N.Y.2d 267, 246 N.Y.S.2d 600, 603, 196 N.E.2d 245 (1963)); *see also Ecolab, Inc. v. Paolo,* 753 F.Supp. 1100, 1113 (E.D.N.Y.1991) (enjoining the unauthorized physical taking and exploitation of internal company documents even where the information would not otherwise qualify as a trade secret).

In the present case, the Court finds that Barton's services were sufficiently unique to render the restrictive covenant enforceable.

19. The Satellite Defendants do not argue that they lacked knowledge of the Employment Contract or that INI failed to plead the damages element of Count III. In any event, the Complaint alleges that, on or about October 1, 1991, INI advised the Satellite Defendants that Barton was prohibited by his Employment Contract from competing with INI and sharing any of INI's proprietary information with Satellite. *See* Complaint at ¶ 30. The Complaint also alleges that INI was damaged by the Satellite Defendants' actions. *Id.* at ¶¶ 39–40.

■ "An unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." *Roy Export Co. v. Columbia Broadcasting Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *see also Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.*, 678 F.Supp. 424, 429 (S.D.N.Y.1987) (stating that the essence of a claim for unfair competition is "the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of goods") (citing *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980)). The doctrine is " 'broad and flexible,' " encompassing " 'any form of commercial immorality.' " *Roy Export Co. v. Columbia Broadcasting Sys., Inc.*, 672 F.2d at 1105 (quoting *Metropolitan Opera Ass'n v. Wagner–Nichols Recorder Corp.*, 199 Misc. 786, 101 N.Y.S.2d 483, 489 (N.Y.Sup.Ct.N.Y.Co. 1950), *aff'd*, 279 A.D. 632, 107 N.Y.S.2d 795 (1st Dep't 1951)). Thus, even where the information taken would not otherwise qualify as a trade secret, the unauthorized physical taking and exploitation of internal company documents for use in a competitor's business constitutes unfair competition. *Ecolab Inc. v. Paolo*, 753 F.Supp. at 1111 (citing *Advanced Magnification Instruments of Oneonta, N.Y., Ltd. v. Minuteman Optical Corp.*, 135 A.D.2d 889, 522 N.Y.S.2d 287 (3d Dep't 1987)); *see also Continental Dynamics Corp. v. Kanter*, 64 A.D.2d 975, 408 N.Y.S.2d 801, 802 (2d Dep't 1978) (even where an employee's physical taking of an employer's customer lists does not rise to the level of trade secrets, it may nevertheless form the basis for a cause of action for unfair competition).

### a. The INI Orlando Floor Plan

■ The Satellite Defendants argue that, to the extent that INI's unfair competition claim is premised on the misappropriation of the INI Orlando Floor Plan, the claim is preempted by federal copyright law.[20] The Court agrees.

It is well-settled that federal copyright law preempts all state claims "that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a). Specifically, a claim is preempted if two conditions are satisfied:

(1) the subject matter of the work in which the state law rights are asserted comes within the subject matter of the copyright laws; and (2) the state law rights asserted in the work are equivalent to the exclusive rights protected by the federal copyright laws.

*Universal City Studios v. T–Shirt Gallery, Ltd.*, 634 F.Supp. 1468, 1474–75 (S.D.N.Y. 1986).

This Circuit has applied the preemption doctrine to preclude state unfair competition claims that rely on a misappropriation theory of unfair competition, including claims for commercial immorality. *See Financial Info., Inc. v. Moody's Investors Serv., Inc.*, 808 F.2d 204, 208 (2d Cir.1986), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987); *Warner Bros., Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 247 (2d Cir.1983). In *Demetriades v. Kaufmann*, 698 F.Supp. at 526, for example, this Court found that a claim for the wrongful appropriation of the plaintiffs' architectural plans was preempted by federal copyright law. *See also Intown Enters., Inc. v. Barnes*, 721 F.Supp. 1263, 1267 (N.D.Ga.1989) (where plaintiff conceded that its claim for misappropriation was preempted).

The Court finds that INI's claim for unfair competition with respect to the INI Orlando Floor Plan is preempted by federal copyright law. The INI Orlando Floor Plan, which is an architectural work, is within the subject matter of the copyright laws. *See* 17 U.S.C. § 102(a)(8). In addition, the exclusive rights to reproduce and distribute the INI Orlando Floor Plan are within the general scope of copyright protection. Accordingly, the Satellite Defendants' motion for judgment on the pleadings dismissing Count V as it concerns

---

**20.** The Satellite Defendants do not contend that INI's unfair competition claim based on the use of its other documents is preempted.

the misappropriation of the INI Orlando Floor Plan is granted.[21]

### b. INI's Other Documents

With respect to INI's claim for unfair competition based on the use of its other documents, the Satellite Defendants contend that an issue of fact exists as to whether (1) Barton took these documents when he left employment at INI; (2) the Satellite Defendants used these documents; and (3) the documents contained any confidential or proprietary information not readily available from other sources. While INI claims that "it is undisputed" that the Satellite Defendants received and used numerous stolen INI documents, the Court finds that an issue of fact exists as to whether the Satellite Defendants improperly used INI's documents. In light of this disputed issue of fact, the parties' summary judgment motions are denied.[22]

### 3. Conspiracy and Punitive Damages

The Satellite Defendants also move for judgment on the pleadings dismissing Count VI of the Complaint, which states a separate cause of action for conspiracy and punitive damages. New York law does not provide a substantive tort of civil conspiracy. *Danahy v. Meese*, 84 A.D.2d 670, 446 N.Y.S.2d 611, 614 (4th Dep't 1981); *Cunningham v. Hagedorn*, 72 A.D.2d 702, 422 N.Y.S.2d 70, 73 (1st Dep't 1979); *see also John's Insulation, Inc. v. Siska Constr. Co.*, 774 F.Supp. 156, 161 (S.D.N.Y.1991) (stating that civil conspiracy is not of itself actionable under New York law). Rather, a plaintiff must plead specific wrongful acts that constitute an independent tort. *John's Insulation, Inc. v. Siska Constr. Co.*, 774 F.Supp. at 161 (citing *Valdan Sportswear v. Montgomery Ward & Co.*, 591 F.Supp. 1188 (S.D.N.Y. 1984)).

Allegations of conspiracy are permitted, however, to show that the substantive tortious acts complained of flowed from a common scheme or plan and to connect each defendant with an actionable injury. *Danahy v. Meese*, 84 A.D.2d 670, 446 N.Y.S.2d at 614. Thus, allegations of civil conspiracy are proper "for the purpose of establishing joint liability by co-participants in tortious conduct." *John's Insulation, Inc. v. Siska Constr. Co.*, 774 F.Supp. at 162 (citing *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir.1981)).

In the present case, Count VI of the Complaint states that the Satellite Defendants and Barton

> have all, jointly and severally, conspired and agreed to inflict injury on INI by the misappropriation of the Proprietary Information, the misappropriation of INI's trade dress, the infringement of INI's copyright, the construction of the Orlando Facility and the tortious interference with the Employment Contract.

*See* Complaint at ¶ 56. To the extent that these substantive torts survive the Satellite Defendants' motion for summary judgment and judgment on the pleadings, the conspiracy allegations merely serve the proper purpose of allowing the acts of each of the defendants to be attributed to the others. *See Alco Standard Corp. v. Schmid Bros., Inc.*, 647 F.Supp. 4, 7–8 (S.D.N.Y.1986) (denying motion to dismiss where conspiracy claim merely imputed the acts of one defendant to the others).

With respect to that portion of Count VI that alleges a claim for punitive damages, the Court notes that there is no independent cause of action for punitive damages under New York law. *Laks v. Spring-*

---

**21.** While the Court notes that a state unfair competition claim based on the tort of "passing off" is not preempted by federal copyright law, *see Warner Bros., Inc. v. American Broadcasting Cos.*, 720 F.2d at 247, the Complaint fails to state any such cause of action. *See supra*, at 724–726.

**22.** The Court notes, however, that INI's unfair competition claim states a cause of action even if the documents did not contain any trade secrets or confidential information. *See Ecolab Inc. v. Paolo*, 753 F.Supp. at 1111 (stating that "even where the information would not otherwise qualify as a trade secret, the unauthorized physical taking and exploitation of internal company documents ... is to be enjoined as unfair competition"); *Advanced Magnification Instruments of Oneonta, N.Y., Ltd. v. Minuteman Optical Corp.*, 522 N.Y.S.2d at 289–290 (same); *Continental Dynamics Corp. v. Kanter*, 408 N.Y.S.2d at 802 (same).

**732**

er, 101 A.D.2d 1001, 476 N.Y.S.2d 951, 952 (4th Dep't 1984); *Steinberg v. Monasch,* 85 A.D.2d 403, 448 N.Y.S.2d 200, 202–03 (1st Dep't 1982). While punitive damages may not be alleged as a separate cause of action, however, they are recoverable if the proof establishes that the defendant's conduct is "gross, wanton and willful." *Laks v. Springer,* 476 N.Y.S.2d at 952; *see also Green v. Fischbein Olivieri Rozenholc & Badillo,* 119 A.D.2d 345, 507 N.Y.S.2d 148, 153 (1st Dep't 1986). Thus, while the Court finds that the claim for punitive damages is improperly pled as a separate cause of action, the Complaint is deemed to demand punitive damages on the underlying causes of action. Accordingly, the Satellite Defendants' motion for judgment on the pleadings dismissing Count VI of the Complaint is granted to the extent that Count VI alleges a conspiracy based on the underlying Counts of the Complaint that this Court has dismissed. In all other respects, the Satellite Defendants' motion to dismiss Count VI is denied.

### CONCLUSION

For the reasons set forth above, the Satellite Defendants' motion for judgment on the pleadings dismissing Count I of the Complaint except to the extent that it alleges a claim for copyright infringement based on the unauthorized copying of the INI Orlando Floor Plan and INI Workstation Designs is granted. INI's motion for summary judgment on liability as to Count I is granted with respect to the INI Orlando Floor Plan and denied with respect to the INI Workstation Designs. The Satellite Defendants' motion for judgment on the pleadings dismissing (1) Count V is granted to the extent that it alleges a cause of action for the misappropriation of the INI Orlando Floor Plan; and (2) Count VI is granted to the extent that it alleges a conspiracy based on the underlying Counts of the Complaint that this Court has dismissed. The parties' remaining motions for judgment on the pleadings and summary judgment are denied. The parties are directed to finish any remaining discovery and to appear for a pretrial conference before

this Court on Wednesday, March 1, 1995, at 10:30 a.m.

SO ORDERED.